ULMER *v.* PISTOLE.

[76 South. 522, Division A.]

1. MUNICIPAL CORPORATIONS. *Streets. Duties of automobile drivers.*

It is negligence for the driver of an automobile not to look in both directions when passing a street crossing.

2. JURY. *Drawing jury. Prejudice. Evidence. Sufficiency.*

Under the facts of this case the court held, that defendant was not prejudiced by the fact that the plaintiff's brother who was the clerk of the board of supervisors was present, and assisted in the drawing of the juries for the term.

3. TRIAL. *Argument of counsel.*

The fact that the plaintiff's counsel in his closing argument to the jury spoke of defendants' instructions as "these little, old, trickey, catchy instructions given for the purpose of misleading an honest jury," while highly improper, was not reversible error.

4. JURY. *Verdict of nine jurors. Validity. Conclusiveness.*

A verdict in a civil case returned by nine jurors is valid and constitutional and the verdict cannot be impeached by any one of the twelve jurors on the jury.

5. DAMAGES. *Excessive damages.*

A verdict of ten thousand dollars to a husband for the injury, pain, suffering and death of his wife caused by an automobile collision was not excessive.

6. MUNICIPAL CORPORATIONS. *Streets. Speed of travel.*

The driving of an automobile at an unlawful and dangerous rate of speed, upon a frequently used street in a populous part of a city, is negligence *per se.*

7. MUNICIPAL CORPORATIONS. *Streets. Speed of travel.*

The operator of an automobile is entitled to the reasonable use and enjoyment of the streets and highways so long as he operates his car in a careful and lawful manner, but the negligent and reckless operator who drives his car at a dangerous or unlawful rate of speed in disregard of the rights and safety of others should be held to strict accountability both civilly and criminally for his wrongful conduct.

8. MUNICIPAL CORPORATIONS. *Street. Speed of travel.*

The same general law applicable to the use of all vehicles on public highways applies to automobiles, the substance of which is that a driver must use that degree of care and caution which an ordinarily prudent person would exercise under the same circumstances.

9. SAME.

The driver of an automobile must keep his machine constantly under control; he must continue on the alert for pedestrians and others using the streets, and must anticipate their presence; especially must he expect and look out for vehicles and persons at such places as street intersections and corners, shopping centers, and other familiar places by and through which the main currents of the population habitually pass. It is his duty to slow down at street intersections in order that possible accidents and collisions may be foreseen and averted.

APPEAL from the circuit court of Lauderdale county.
HON. R. W. HEIDELBERG, Judge.

Suit by W. H. Pistole against J. V. Ulmer. From
a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Jacobson & Brooks* and *Baskin & Wilbourn,* for appellant.

*C. B. Cameron,* for appellee.

HOLDEN, J., delivered the opinion of the court.

The appellee recovered a judgment of ten thousand
dollars against appellant J. V. Ulmer for the injury
and death of his wife, Mrs. W. H. Pistole, who was
injured by an automobile operated by appellant in the
streets of Meridian. The injury was received in the
following manner: Mrs. W. H. Pistole was riding in
a single bugy with another lady, who was driving the
horse, going east on Ninth street, when they came to
the intersection of Twenty-Third avenue, which avenue
runs north and south, and they had nearly crossed over
Twenty-Third avenue on Ninth street when appellant
Ulmer approached in his automobile from the south going
north on the right-hand or east side of Twenty-Third
avenue, and collided with the buggy, striking the right,
rear wheel with great force and violence, throwing the
two ladies to the pavement, turning the buggy and
horse crosswise in Ninth street, and hurling the buggy
cushion against a bystander on the sidewalk. Mrs.
Pistole received a gash on the head, and was other-
wise injured, from which injuries she finally died.

There was an arc light near, which lighted the scene
of the collision. The automobile also had its lamps
lighted. There was nothing to prevent appellant Ulmer
from seeing the buggy as it approached and crossed
Twenty-Third street in his pathway, if he had looked

in that direction. The automobile was running at the rate of twenty or twenty-five miles per hour at the time it struck the buggy, and there was no warning given by horn or otherwise. The city ordinance provides that it shall be unlawful for automobiles to exceed a speed of eight miles per hour in the fire limits, and fifteen elsewhere in the city. Twenty-Third avenue and Ninth street at the point of the injury were frequently used by vehicles and pedestrians.

The testimony offered by appellant is in conflict in some particulars with the above facts proven by the appellee, but of course the verdict of the jury settles the dispute as to the facts in favor of appellee. The appellant in his testimony practically confesses negligence on his part. He testified that at the time of the collision he was not looking out for any person or vehicle that might come from the west going east across Twenty-Third avenue, but that he was looking only to his right for vehicles to come out of Ninth street going west. His failure to look in both directions was negligence.

In his appeal here the appellant assigns several errors in the trial below. We will discuss the assignments which appear to merit notice.

- First. Appellant contends that the court erred in refusing to sustain the challenge and motion of defendant to quash the entire panel of jurors summoned to serve during the week of court in which this case was set for trial, on the ground that W. R. Pistole, a brother of appellee W. H. Pistole, was the chancery clerk of Lauderdale county, and was clerk of the board of supervisors, and as such assisted in selecting the list of jurors and in drawing the names from the box to serve as jurors at that term of court while this case was pending for trial therein. It is urged that:

"For sound reasons of public policy the appellant should not have been forced to bear any of the pos-

sible consequences of the situation, even though no actual fraud was shown to have been committed.''

This principle contended for by appellant is well established in the common law, and is based upon the old idea that a person should not be placed in a position where there will arise a conflict between interest and integrity; that the temptation to do wrong should not be afforded by opportunity for fraud. We do not dispute the soundness of this view, and in proper cases the application of this principle should be made, but the case before us does not come fairly within this rule. The record here discloses that the testimony taken on the hearing of the motion demonstrated clearly and conclusively that no fraud was committed in securing the jury under the directory terms of the statute providing the method of obtaining jurors. It appears that the chancery clerk did not as clerk of the board of supervisiors select the names placed in the jury box, but this was done by the members of the board of supervisors from their respective districts. In drawing the list of jurors from the box the clerk did not select the names, but drew them in a mechanical way; not having any discretion or knowledge as to what names would be drawn as jurors for the term of court. The undisputed proof in the record shows that the clerk did not in any way select or discriminate in the drawing of the jurors from the box. So it abundantly appears that no fraud was practiced, and that there was little or no opportunity for fraudulent conduct. Section 2716, Code 1906, provides that "a challenge to the array shall not be sustained, except for fraud." Under the particular facts here we cannot say there was fraud or even a well-grounded suspicion of it.

Second. The appellant complains that the court erred in granting certain instructions to the appellee, and refusing certain instructions asked for by appellant. We have carefully reviewed all of the instructions re

fused and given to both sides, and, taking all of them together, we cannot say that the lower court committed reversible error. in announcing the law governing the case.

Third. Appellant contends that the proof is not sufficient to show that the injury received by Mrs. Pistole was the cause of her death. There is no merit in this position, as a number of witnesses, including doctors, testified that the death resulted from the injuries received by her when struck by the automobile driven by appellant. The jury believed this testimony, which ends the dispute of fact.

Fourth. It is urged by appellant that a new trial should have been granted appellant on account of the language used by counsel for plaintiff in the closing argument before the jury. The attorney said to the jury in speaking of the defendant's instructions, "These little, old, tricky, catchy instructions, given for the purpose of misleading an honest jury." While the language is imporper, and might, under some circumstances, place the attorney in contempt of court, still we are unable to say that the improper remarks substantially damaged or prejudiced the case of appellant, and we will not reverse for this reason. But improper or unfair argument should have no place in courts of justice.

Fifth. The appellants assigns as error the verdict of nine jurors, as void and unconstitutional; that the verdict of ten thousand dollars is excessive; and that it was impeached by one of the jurors. As to these last contentions we hold that a verdict in civil cases returned by nine jurors is valid and constitutional, and the verdict cannot be impeached by any one of the twelve jurors on the jury. The verdict of ten thousand dollars for the injury, pain, suffering, and death is not excessive in this case, and we see no good reason for disturbing it.

Viewing the case as a whole, we do not think the appellant can justly complain at the result reached in

the lower court. He was driving his automobile at an unlawful and dangerous rate of speed upon a frequently used street in a populous part of a city. This was negligence *per se*, approximately contributing to the injury, and in connection with his other negligent conduct may have amounted to gross negligence.

The operator of an automobile is entitled to the reasonable use and enjoyment of the streets and highways so long as he operates his car in a careful and lawful manner. But the negligent and reckless operator who drives his car at a dangerous or unlawful rate of speed in disregard of the rights and safety of others should be held to strict accountability, both civilly and criminally, for his wrongful conduct. With the advent of the motor vehicle the dangers of the crowded city streets have been greatly multiplied and augmented. The automobile was designed to meet the practical needs of many occupations and businesses, and also to furnish to those who could afford the expenditure a new and pleasant means of recreation. Its patent advantages over the horse-drawn vehicle, for purposes of both utility and pleasure, have resulted in its unqualified adoption, especially in our cities. Daily becoming more useful and desirable, its popularity has increased so rapidly during the past few years that manufacturers have been hard pressed to supply the enormous demand for their product. The buggy, the carriage, the cab, and the dray are no more. Where their familiar noises once added to the traffic's din, the purr and roar of the gasoline motor is heard amid the clamor of busy streets, and the loud, harsh noises of gutteral horns ring day and night in the ears of the city's thousands, at once a warning and threat to the hurring throngs. Employed for its legitimate purposes and used with due regard for the safety of others, the automobile is harmless and an altogether desirable means of conveyance. But there has devoloped of late a distinct tendency to its abuse. There seems to be a growing feeling of arrogance a-

mong some owners and operators, an idea that the highways were built peculiarly for their use, and a disposition, therefore, to use them to the inconvenience and even to the peril, of others equally entitled to this privilege. This is not true of all, but only of a few in each community, whose defiance of law and disregard of human life has come to be appalling. Local speed laws and traffic regulations have notoriously failed to daunt these seeming speed maniacs, and it is indeed marvelous that more accidents do not result from their activities.

As for the law that governs the use of the highways and streets by drivers of cars, it is not difficult to define the principles to be applied with respect to such use. The same general law applicable to the use of all vehicles on public highways applies to automobiles, the substance of which is that a driver must use that degree of care and caution which an ordinarily prudent person would exercise under the same circumstances. But this is not all. Recognizing in the motor vehicle an instrumentality equally as dangerous in many respects as the locomotive and trolley car, the law exacts additional precautions from operators. The driver of an automobile must keep his machine constantly under control, he must continue on the alert for pedestrians and others using the streets, and must anticipate their presence. To assume that the way is clear is not his right. The fact that he was unaware of the presence of others in no way extenuates conduct which would have been wantonly reckless, had he known that another person or vehicle was crossing his pathway. Especially must he expect and look out for other vehicles and persons at such places as street intersections and corners, shopping centers, and other familiar places by and through which the main currents of the population habitually pass. It is his duty, and the great majority of city traffic regulations to prescribe, to slow down at street intersections, in order that possible accidents and collisions may be foreseen and averted. It has even been held that the fail-

ure to see a pedestrian in the street amounted to negligence. The following authorities are here cited to sustain the above conclusions: 2 R. C. L. p. 1184; *Lauson* v. *Fond du Lac,* 141 Wis. 57, 123 N.W. 629, 135 Am. St. Rep. 30, 25 L. R. A. (N. S.) 40; 108 Am. St. Rep. 214, note; 4 Ann. Cas. 398, note; 13 Ann. Cas. 464, note; 1 L. R. A. (N. S.) 227, note; *State v. Campbell,* 82 Conn. 671, 74 Atl. 927, 135 Am. St. Rep. 293, 18 Ann. Cas. 236; *Weil* v. *Kreutzer,* 134 Ky. 563, 121 S. W. 471, 24 L. R. A. (N. S.) 557, and note; *Minor* v. *Mapes,* 102 Ark. 351, 144 S. W. 219, 39 L. R. A. (N. S.) 214; *Minor* v. *Stevens,* 65 Wash. 423, 118 Pac. 313, 42 L. R. A. (N. S.) 1178, and note.

The courts of this state have not often been called upon to adjudicate controversies arising from the wrongful use of automobiles on the public highways. But the fund of judicial decision as contributed to by sister states during the last two or three years supplies an abundance of well-reasoned opinions and precedents which support fully the views set forth herein.

The judgment of the lower court is therefore affirmed.

*Affirmed.*