MISSISSIPPI POWER & LIGHT CO. *v.* SUMNER GIN CO.

(Division A.   March 24, 1930.   Suggestion of Error Overruled May 12, 1930.)

[127 So. 284.   No. 27764.]

Shands, Elmore & Causey, of Cleveland, Green, Green & Potter, of Jackson, and Frank A. Reid and Samuel W. Murphy, both of New York City, for appellant.

832

**J. M. Stevens**, of Jackson, and **R. L. Cannon**, of Sumner, for appellee.

Argued orally by **Garner W. Green**, for appellant, and by **J. Morgan Stevens**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

On a declaration for damages for negligently setting fire to and burning the gin plant of appellee, the Sumner Gin Company, there was rendered against appellant, on the verdict of a jury, judgment for ten thousand, seven hundred thirty-three dollars and thirty-three cents, from which an appeal is prosecuted to this court.

The declaration is in three counts. The first count averred ownership of the gin plant by the appellee, the Sumner Gin Company, and a lease of its gin plant to the Mississippi Power & Light Company, the appellant, for the erection of a generator and the operation of appellant's electric light system, for the consideration of five dollars per day, by virtue of which the appellant installed its electric generator and fixtures in the gin plant of the appellee, thereby connecting its two plants, at Webb and Sumner, for the operation of an electric light system.

The first count charged negligence in overloading said generator and other machinery installed in appellee's gin plant by appellant, by attaching thereto its lighting ap-

paratus for furnishing lights to the town of Webb, whereby the overloading of such generator and other machinery therein resulted in an explosion which set fire to and destroyed the gin plant, and also the use of defective machinery by the appellant. The second count, in short, charged the willful, improper, and negligent operation of appellant's plant at the time of the injury; and the third count charged, in general, negligence in the operation of the plant. The appellant filed pleas of the general issue to the several counts.

On the question of negligence, appellee's case rests upon the testimony of the witness Joseph McNaught, who was joined as a defendant with the Mississippi Power & Light Company, and S. T. Ainsworth, the superintendent of the said company at Sumner. The fire occurred on the night of May 8, 1926. McNaught was night operator for the appellant company, and ran the lighting plants from six o'clock in the evening to six o'clock in the morning, having sole charge thereof and no assistants to aid him in the operation of same. The Sumner plant of appellant furnished electric current for the town of Webb when the plant there was not in operation, and the plant at Webb furnished electric current for the town of Webb on week days from six P. M. to nine forty-five P. M., on Saturdays continued running until eleven or eleven thirty P. M. The witness McNaught, upon going on duty at six P. M. on Saturday night of this fire, discovered very shortly thereafter, when oiling the bearing on the right-hand side of the generator, that it was "kinder warm." The generator in the gin plant rested on timbers laid on sills. The bearing with its journal box was five feet beneath a wooden ceiling; the journal box was of steel, holding about one-half gallon of oil, at the top of which was an opening four inches long and three-quarters wide for the intake of oil, and, when filled to its capacity, had a vacant space of six inches above the oil level. Escape of oil along the shaft was prevented by light washers,

made of rubber or felt, attached on each end inside of the journal box. It was the custom of McNaught to oil the bearings once every three hours, but, having found this bearing warm when he went on duty, and still warmer a half hour later, it was oiled again. At seven o'clock still finding it heating up, he called the superintendent, Ainsworth, over the telephone, and informed him of the condition of the bearing, whereupon he was instructed by Ainsworth to oil it often and regularly. The Webb plant, on that night, was only running from six thirty P. M. to nine forty-five P. M., and McNaught requested Ainsworth to telephone the Webb plant to continue running longer that night than usual, which Ainsworth did. Thereafter McNaught continued oiling the bearing, though it kept getting hotter; his description of its condition being that it was so warm that "I was only able to hold my hand on it." At nine forty-five P. M. the Webb plant stopped running, thereby throwing additional pressure on, and causing the Sumner plant to carry that additional load, and the bearing to continue to get hotter. At ten o'clock McNaught tried to get the superintendent over the telephone to inform him of its condition, and continued, without avail, to try to reach him until eleven twenty-seven P. M., when he succeeded in getting Mr. Ainsworth's wife at her home; but, being unable to locate Ainsworth, he tried, as he said, to run the machinery until midnight. He stated that there was smoke coming from the right-hand side of the generator out of the bearing, but that he oiled this particular bearing every fifteen minutes; that, because of the heat of the generator box and the smoke therefrom, he was afraid of an explosion; that he did not figure on shutting down the plant except as a last resort, as it was his duty to keep the plant in operation so as to furnish light. But at about eleven thirty P. M., on account of the overheated condition of the generator box, he shut down the plant. After shutting down the plant, he went to the overheated generator box,

opened the lid of same, and poured in about a quart, or more of oil, whereupon, to use his language, the oil "exploded into a flame of fire," singeing his eyelashes and hair, and shot up to the second story or ceiling and set the ginhouse on fire. He said, to quote his language, the fire was "ruination, the whole thing burned," and also stated that, in his opinion, had the plant been properly operated, it would not have ignited and set fire to the gin in the ordinary and usual course of things. He said, in shutting down the plant, that he did so to allow the heated bearing to cool off in order that he might start the plant again to furnish lights.

There were a number of witnesses for the plaintiff and the defendant who testified that, when the bearings in the journal box became overheated, the proper precaution to take was to oil the bearings frequently, thereby cooling the heated parts. One witness, when testifying, said that the operator might have had sense enough to shut the plant down, and, if necessary, scrape the bearings. It was proved that the continued operation of a plant when the bearings are running hot would cause the shaft operating in the journal box coming in contact with them to freeze, thus causing a deadlock of its entire machinery and a cessation of its operation; so that all the evidence in the case shows that the necessary precaution to take was to shut down the plant and oil the heated parts of the machinery.

It will be seen from this statement of facts that the machinery was not shown to be defective, and that no explosion or damage was shown to ensue while the machinery of appellant's plant was in operation, and that the so-called explosion or ignition of the oil in the journal box did not occur while the machinery was in motion, although it was smoking, and the precaution of oiling the bearings was frequently taken.

The witness McNaught contradicted himself in a written statement made by him previous to the trial of this

case, wherein he stated another and different cause for the fire from that sworn to by him on the witness stand.

After repeated examination of the record in this case, we believe that we have accurately stated the essential facts necessary to a decision of this case.

A critical examination of the many instructions given on behalf of the appellee convinces us that appellee staked his cause in the court below on a general charge of negligence, relying upon a prima-facie case of negligence resting upon the doctrine of res ipsa loquitur. The appellant requested a peremptory instruction, which was refused, but we are of opinion that it should have been given by the court in this case. We are further of the opinion that there is nothing in the record to substantiate the charge that the fire causing the damage was the proximate result of the operation of the machinery. There is not a scintilla of evidence tending to show any defects in the machinery, or specifically the generator from which the fire emanated.

Res ipsa loquitur means "the thing speaks for itself;" and in this case that means the so-called explosion or ignition of the oil speaks for itself. What does it say to us? Tersely stated, this theory says to us that there was a hot bearing connected with the operation of the generator, which began smoking, and that oil was poured on it for several hours at frequent intervals; that, when the top of the journal box was raised and oil poured in the vacuum of this box, devised for the purpose of putting oil therein, while the machinery was bearing the load, no explosion occurred, and neither did any fire emanate therefrom; that at a time when the machinery had ceased to function, had been "shut off," upon again pouring oil in the same place where it had been poured many times that night, the explosion occurred, the oil ignited, and, from the ignition of same, the flames bursting forth set fire to the ginhouse and destroyed it. It occurs to us that every fact possible to adduce as to the ma-

chinery, the situation thereof, as well as every circumstance attendant upon the occasion of the fire in this case, has been advanced by McNaught, who was evidently an unfriendly employee of the appellant light company. Of course, in the light of facts now known by us, it would be safe to say that, had the defendant company not operated its plant at all on the night of the fire, there would have been no fire—at least, there could have been no fire traced to this specific origin and cause. None of the witnesses who testified had ever seen a fire produced by this cause, and no witness testified that it was negligence to apply oil to the heated parts, but, on the other hand, every witness who testified in the case stated, in his opinion, that oiling of the heated parts was the necessary precaution to take in such a situation. Not only was oil applied during the running of the machinery, but it was stopped in order to pour oil on the affected part to cool it off. No sort of examination could have been made until these bearings had cooled sufficiently for inspection, nor could the bearing have been scraped until this cooling had taken place.

What other precaution could the appellant company have taken to guard against such a situation? But it is said that McNaught should have ceased operation of the machinery sooner. What test are we to apply? How much sooner? Generally and ordinarily oil applied will cool a hot box; that is the undisputed remedy. Did not the appellant, through its agent or operator, do that which is regarded as the proper thing to do? It was engaged in the business of generating electricity for the public in that vicinity. The duty and amount of care in such a situation is measured by the danger present or incident to an operation or instrumentality, and a person engaged in an act which circumstances indicate may be dangerous must take all the care which prudence would suggest to avoid injury. See 45 C. J. 696. The degree of care required to avoid the imputation of negli-

gence must be according to the circumstances or in proportion to the danger to be anticipated. See Cobb v. Twitchell, 91 Fla. 539, 108 So. 186, 45 A. L. R. 865.

Although it is true that, where a declaration charges gross or willful negligence, and the evidence shows simple negligence, there is no variance, as the charge of willfulness is regarded as surplusage. A. & V. R. Co. v. Hanes, 69 Miss. 160, 13 So. 246; Hollingshed v. R. Co., 99 Miss. 464, 55 So. 40. Of course, in every case of negligence, the circumstances under which an actor is placed, what an ordinarily prudent man would do or fail to do in such circumstances, must always be considered in connection with negligence. Every untoward or unforeseen occurrence may not be regarded as such negligence as would allow recovery therefor. When an actor does those things which prudence, and common experience, or the custom of those who deal with such things under such circumstances have demonstrated to be the ordinary and prudent manner in which to deal with them, can negligence be presumed therefrom when the unexpected or unforeseen occurs? In performing the duties incident to one's employment, a person may rightfully rely upon experience in respect to doing those things which have become a custom and which have retarded or prevented injurious effects. We cannot dictate to the appellant company, or others, when a hot box is produced and fire therefrom might ensue, that such a company, through its employee operating the same, should cease to do business. We think the custom of oiling the hot box as conformed to by the appellant company in this case does not constitute negligence, but the reverse.

We are of the opinion that all the facts and circumstances of this case, taken and considered together, do not constitute negligence on the part of the appellant company, nor do we think that an inference can be drawn fairly therefrom establishing negligence. See Otho Waddle v. Dr. W. H. Sutherland (Miss.), 126 So. 201.

In the case of Chicago, St. L. & N. O. R. Co. v. Trotter, 60 Miss. 442, it was held that, where a passenger of a railroad walked off the platform of the car and was injured by the fall, it devolved upon such passenger to show negligence on the part of the defendant unless the injury resulted from a cause which ordinarily exists only by reason of the negligence of the carrier. The facts in the instant case show that hot boxes are not unusual in connection with the operation of machinery, and the record does not show that the heated condition of the box was due to negligence. The only thing that might establish an inference of negligence would be the failure or omission to oil the particular parts of machinery. In this case, to uphold the application of the doctrine of res ipsa loquitur, we should be compelled to say that the fire produced by oiling the hot box was due to the negligence of the operator. See, also, Louisville, N. O. & T. R. Co. v. Conroy, 63 Miss. 573, 56 Am. Rep. 835.

In the case of Gulfport, etc., Traction Co. v. Hicks, 116 Miss. 164, 76 So. 873, this court simply held that our railroad prima-facie statute applied to one who received an injury on an interurban electric car through a shock received from the controller of the car upon which he was standing; and further that such shock was impossible in the absence of negligence, and, that being true, a presumption of negligence arose under the doctrine of res ipsa loquitur.

In the case of Gulf & S. I. R. Co. v. Odum, 133 Miss. 543, 98 So. 60, the court declined to pass upon whether or not the presumption of negligence arose from the fact of an explosion on a railroad car, but further held that all the facts and circumstances of that case rebutted any such presumption, if it existed. While the facts in the Odom case are not the same as the facts in this case, the conclusion reached in that case is applicable here when we consider that everything was done to prevent injury which is usually done in such cases. There is no conflict

of the facts in this case except the witness McNaught was shown to have made an unsworn contradictory statement as to how this accident occurred prior to the trial.

Counsel for appellee insist that the doctrine applied by this court in numerous cases as to the degree of care required of those who handle electricity is applicable here. There is no claim of injury due to the handling of the dangerous commodity, electricity, in any shape, manner, or form, and these authorities are not in point in this case.

Reversed, and judgment for appellant.