## VANN *v.* TANKERSLY.

(Division A.   Jan. 23, 1933.)

[145 So. 642.   No. 30374.]

**Kimmons & Boswell,** of Water Valley, for appellant.

750

**Stone & Stone**, of Coffeeville, for appellee.

**McGowen, J.**, delivered the opinion of the court.

On the 29th of July, 1931, the appellant, J. E. Vann, in a 1929 model Ford coupé, accompanied by his wife, drove from their country home to the town of Coffeeville to attend a public political speaking at the courthouse. After attending the speaking, Vann and his wife drove to Main street and parked thereon in front of

Bates Drug Store and the Coffeeville Bank against the curb facing west.

Main or Front street is between sixty and one hundred feet wide and runs north and south parallel with the Illinois Central Railroad, with stores on the west side thereof fronting the east, and the railroad track on the east side. Depot street runs west to the public highway leading west through the county. Bates Drug Store is on the north side of Depot street, fronting on Main street. Eades Store is on the south side of Depot street. The intersection of Depot and Front or Main streets is the terminus of Depot street.

Ostensibly, the space between Bates Drug Store and Eades Store was used as a street. There is a sidewalk for pedestrians on the south and alongside Eades Store. Along the south side of Bates Drug Store, there had been maintained a long bench, about twelve inches wide, on which people were accustomed to sit and discuss the issues of the day. At times, this bench would be temporarily abandoned, until some patriotic citizen would renew the loafing place.

On the night in question, A. G. Tankersly, a night watchman employed by the merchants of the town of Coffeeville, was seated on the bench, with Walter Page on the east next to him, and next to Page, one Fly; all three being engaged in conversation. Vann, an elderly man, and his wife, came back to their car and got into it with the view of returning to their home. The witness Fly assisted Mrs. Vann into the car. Vann, seated at the wheel on the left hand side, backed out slowly, southeastwardly, with a view of heading his car north. He backed toward the railroad at first, and then, according to the witnesses, his car described a circle extending more than halfway into the street, came back, crossed the intersection of Depot and Front or Main streets, and was finally stopped by the wall of Bates

Drug Store, where the wheels dug into the ground, indicating that the motor continued to run after the car struck the wall. The car struck Tankersly seated on the bench as aforesaid, and he was seriously injured, and sued Vann for the injuries thus sustained.

The evidence is uncontradicted that Mrs. Vann closed the door after she had gotten into the car, and that as the car was making the circle, the door was "flung open" and Mrs. Vann was being precipitated from the car headforemost. Vann, the husband, caught his wife and held her, thereby surrendering his control of the steering of the car. The witnesses stated that, at this point, the car speeded up, and was running from twenty to thirty miles per hour when it backed into Bates Drug Store and struck and injured Tankersly. At or about the time the car stopped, Mrs. Vann fell to the ground. She had been held by her husband on the running board in some manner. It is evident that the door of the car closed by Mrs. Vann did not fasten securely.

There is much conflict in the testimony as to the circumference of the circle described by the car in its voyage. There is no dispute as to the door suddenly coming open and as to Mrs. Vann's falling therefrom, nor as to Vann seizing her; and it is evident that he abandoned control of the steering wheel of the car, and must have pressed upon the accelerator, feeding more gas to the car and greatly increasing the speed thereof.

Both Vann and his wife were greatly excited from the time she fell from the car, and Vann says he lost his mind. He thought she fell as he reached the intersection of the two streets.

The witness Fly testified that the car was headed toward the bench where he and Tankersly were seated, coming rapidly, and that he saw it twenty feet before it reached them and moved, and that, at that moment, Tankersly "hollered," but made no effort to move and remained seated on the bench until struck by the car.

Tankersly testified that he did not see the car until too late to move, when it was about three feet from him.

As Vann was backing his car, he was looking back- ward, and he testified that, when he discovered his wife falling, he remembers nothing except that he was holding his wife to prevent injury to her. He did not know that any one was seated on the bench, and evidently did not intend to drive into Depot street. There was no evidence as to the presence of any other car being in the vicinity at or during the occurrence of this event.

The case was submitted to a jury mainly on the question of whether or not Vann was negligent in not controlling his car, or was confronted with an emergency. The verdict was in favor of Tankersly.

No question of pleading or variance was presented in this case. Vann requested a peremptory instruction, which was refused by the court.

There are other errors assigned, but we shall consider only the question of the liability of Vann under the detailed circumstances.

The statements of Vann and his wife as to her situation and all the circumstances surrounding the accident show clearly that Vann had been guilty of no negligence up to the moment he discovered his wife in peril as she was falling headlong from the car. He then became excited, abandoned control of the car, and sought only to save his wife from injury.

Does an emergency excuse him, under the law? In the case of Ulmer v. Pistole, 115 Miss. 485, 76 So. 522, 524, this court announced the rule controlling drivers of automobiles upon the public highways of the state as follows: "The driver of an automobile must keep his machine constantly under control; he must continue on the alert for pedestrians and others using the streets, and must anticipate their presence. To assume that the way is clear is not his right. The fact that he was un-

aware of the presence of others in no way extenuates conduct which would have been wantonly reckless, had he known that another person or vehicle was crossing his pathway. Especially must he expect and look out for other vehicles and persons at such places as street intersections and corners, shopping centers, and other familiar places by and through which the main currents of the population habitually pass. It is his duty, and the great majority of city traffic regulations so prescribe, to slow down at street intersections, in order that possible accidents and collisions may be foreseen and averted''—citing many authorities.

There being no conflict in the evidence as to the emergency, it becomes a question of law to be settled by the court as to whether or not there was an emergency presented to Vann, the driver, which he did not create by his own negligence, and which will excuse him from liability for injuring Tankersly.

What would a person of ordinary prudence do, under the circumstances by which Vann was confronted, when his wife appeared to him to be in peril? The first impulse of every normal man would be, when thus situated, to undertake to save from harm his wife, or those of his family whom he loves and cherishes. That both Vann and his wife were excited is not disputed; he testifying that he lost his mind.

Counsel for the appellee seems to take the position, only in answer to the proposition advanced by the appellant, that Vann undertook to back away from the curb in a negligent manner, to-wit, rapidly, that he started the car before permitting his wife to become seated therein, and that he did not see that the door was shut. As to all three of these propositions, the record shows otherwise. Mrs. Vann says she closed the door, but it must have been fastened insecurely. All the witnesses agree that Vann drove away slowly. There

is no fair inference from any testimony that Vann created this emergency, unless it be said that by the mere act of driving the car he created it. If no men drove cars on the public highways, of course no injuries would occur; but there was nothing unusual or negligent, as detailed by the witnesses, as to Vann's handling of his car. The evidence is positive that Mrs. Vann was seated in the car, and that she herself undertook to close the door. Even if it be said that it was the duty of the driver of a car to see that the doors thereof were closed, all the evidence is against the appellee's contention that Vann, by his negligence in this respect, created an emergency.

Counsel for the appellee next urges that Vann was eighty years of age, and that a country man eighty years old cannot be trusted to drive a car. The record does not show Vann's age. It does show that he was from the country. We do not know that the courts are authorized to make any distinction, in this behalf, as to whether a man lives in the country or in a town. The record shows that Vann was a careful driver, had driven for many years, and had never had an accident.

Under these circumstances, is a driver of a car to be held liable for his act while unconscious, due to excitement, or because he had lost his mind? He did not bring about this emergency. He did not bring about his excitement. His act was not judicious. If he had put his foot upon the brake instead of the accelerator, the car would have stopped, the emergency would have passed, and probably no injury would have ensued.

Suppose, for instance, his wife had deliberately intended to precipitate herself from the car in a moment of mental aberration? In other words, that she was attempting to commit suicide. Would her willfulness be attributed to her husband when he seized her to prevent the impending injury to her? We think not.

If there had been the slightest negligence in this case bringing about the emergency, then the argument of counsel for appellee that Vann created the emergency would be pertinent and persuasive. But the record contains no such intimation, nor can any such inference be fairly drawn therefrom under the facts. If a driver of a car became involuntarily unconscious, and while in that state the injury occurred, he is not liable therefor.

The only conflict in the testimony here is as to the circumference of the circle made by the car, and not as to the actual motivating cause of loss of control thereof.

In 42 C. J., p. 890, section 592, we find the rule thus stated: "Acts in Emergencies. Where the operator of a motor vehicle is, by a sudden emergency, placed in a position of imminent peril to himself, or to another, without sufficient time in which to determine, with certainty, the best course to pursue, he is not held to the same accuracy of judgment as is required of him under ordinary circumstances, and is not liable for injuries caused by his machine, or precluded from recovering for injuries to himself or his machine, if an accident occurs, even though a course of action other than that which he pursues, might be more judicious, provided he exercises ordinary care in the stress of circumstances to avoid an accident."

This whole scene was enacted, according to the record, in a second or two of time, and Mrs. Vann's peril continued from the time the door of the car was "flung open" until the car was stopped by the wall of Bates Drug Store. Vann was confronted, in a moment of time, with an unusual, extraordinary emergency. His act was not judicious, but it is clear here that he knew not what he did.

If there was any conflict, it would be a question for the jury to determine whether or not the driver of the car had exercised reasonable care. One who has lost his

mind due to intense emotional excitement brought about by great peril cannot exercise any such sane, calm foresight as is demanded of individuals under normal circumstances.

In the case of Alabama & V. Ry. Co. v. Lowe, 73 Miss. 203, 19 So. 96, 97, the action turned upon the contributory negligence of a nurse in charge of two small children, one of whom was killed by a train, and, on this point, the court there said: "Was the nurse in charge of the child guilty of contributory negligence? The jury has answered this negatively, and properly, also, as we think. When the nurse started to cross the track, she saw the smoke from the engine, and knew that a train was approaching; but the train was several hundred feet away, and she had ample time in which to have prudently gone forward, and to have safely crossed the track, even at the high rate of speed at which the train was being run. She failed to so cross, because, when she arrived just on the track, her course was arrested by the general alarm made that the 'bear was loose,' the flight of the crowd in every direction, and the outcries directed to her. Terrified, stunned, incapable of action, the unhappy old nurse stood, motionless, and was herself, with the baby in her arms, only saved from death under the wheels by the prompt and heroic conduct of an obscure colored man whose name is worthy to be embalmed with lasting honor, William Hulitt. This humble hero saved the nurse and the baby. He narrowly escaped with his life in his second effort to save the tender little child whose soul rose Heavenward that moment. He saved two; the third he could not save. He therefore was in no way responsible for the harrowing death of the little innocent; and the poor nurse was not guilty of contributory negligence."

It may be said that the question there was submitted to a jury; but the facts here are different. It is undis-

puted that Vann was, for the moment, engaged in the act of saving his wife from a situation of peril, or the likelihood of great bodily harm, and that there was no time for a deliberate act on the part of the driver.

The language used by this court in the case of Brookhaven Lbr. & Mfg. Co. v. Illinois Cent. R. Co., 68 Miss. 432, 10 So. 66, 69, haply fits the situation in the case at bar. The court there said: "But we forbear to press remarks further on this point, and content ourselves by saying that the engineer was only required to act in view of what he then saw, situated as he was, and that, suddenly and unexpectedly confronted with a complicated difficulty impossible to have been foreseen, he is not to be held accountable for failure to exercise that cool and unembarrassed and unerring judgment which we, freed from sudden surprise and danger, could now form and execute. He appears to have done the best he could, situated as he was, and nothing more could reasonably be required of him."

The case at bar is differentiated from that case by the fact that Vann, in operating the car, was confronted with an emergency arising in a moment, in the twinkling of an eye. He was called on to save his wife and thereby lose control of his car, and control of his mental faculties. On this point see the following: Priestley v. Hays, 147 Miss. 843, 112 So. 788; Mississippi Power & Light Co. v. Sumner Gin Co., 156 Miss. 830, 127 So. 284, and Rhodes v. Fullilove, 161 Miss. 41, 134 So. 840.

As to an emergency arising without fault on the part of the operator of a car, there was no issue presented to the jury, and their decision was evidently due to the fact that the appellee's instruction pressed to the limit the rule announced in Ulmer v. Pistole, supra, and ignored the emergency feature. The oral testimony is uncontradicted, and the physical facts demonstrate the truth

thereof. The peremptory instruction should have been given.

Reversed, and judgment here for appellant.