JONES, et al. *v.* DIXIE GREYHOUND LINES, INC.

Division A. Feb. 19, 1951.

No. 37835 (50 So. (2d) 902)

**Dyer & Campbell,** for appellants.

**Wynn, Hafter, Lake & Tindall,** and **Chandler, Shepherd, Heiskell & Williams,** for appellee.

**Ethridge, C.**

Appellants, Mrs. Burnette Jones, a widow, and her four surviving minor children, sued appellee, Dixie Greyhound Lines, Inc., for damages for the alleged wrongful death of Evelyn Jones, a child of five years and eight months of age at the time of this tragic incident. Evelyn was the daughter of Mrs. Jones, and the sister of the minor appellants. From a jury verdict for appellee, appellant assigns and argues as error the giving of two instructions by the trial court. We hold the two instruc-

tions were erroneous and remand the case for a new trial. Some discussion of the evidence is necessary in order to consider these instructions.

Appellant, Burnette Jones, and her five minor children lived in a house located about midway between the towns of Greenville and Leland in Washington County, Mississippi. The house was situated about fifty feet south of the right of way of U. S. Highway No. 82, which runs east and west for ten miles between the two towns. The highway at that point is straight and level. Its surface is concrete, twenty feet in width, flanked by gravel shoulders on each side, approximately eleven feet wide. On Sunday, July 3, 1949, the pavement was dry and the visibility good. Plaintiffs' witnesses testified that the sun was out. Some witnesses for defendant testified it was cloudy, but there is no serious dispute that the visibility was good.

About nine o'clock that morning, Mrs. Jones, accompanied by her deceased daughter, Evelyn, then about five years and eight months of age, her minor son, appellant Ernest Clyde Jones, then about three years and five months of age, and her infant nephew, Ernest Shelby, then between two and three years of age, went with her brother-in-law, Zellie Shaw, to look over a cotton crop, which was located down the road east from her home. Shaw drove the car, a 1946 model Ford dump truck, and after inspecting the cotton they returned in the truck to a point on the highway opposite a driveway leading to the house occupied by appellants. The truck was facing west, and was stopped off the pavement on the north shoulder of the road. All five of the occupants of the truck were riding in the cab of it. Evelyn was standing beside her mother, next to the right-hand door. When the truck stopped Evelyn got out, and according to the testimony of Mrs. Jones and Shaw started to go around to the front of the truck. Mrs. Jones saw the bus coming up the highway from Greenville toward Leland, west

to east, and both she and Shaw called Evelyn to come back from the front near the right front fender of the truck, and come around to the back with her and the children. After Evelyn had started around to the back of the truck, Mrs. Jones began getting out of it with her infant nephew in one arm and her minor son by the other hand. The truck then started to pull forward a few feet and immediately after that Evelyn started running south across the highway toward her home. Shaw stopped the truck. Mrs. Jones became frightened and screamed at Evelyn, who was running. According to appellee's testimony Mrs. Jones had run out on the highway about halfway across the north side of the pavement trying to catch Evelyn, but appellants' witnesses said she was on the shoulder of the road. The bus struck and killed Evelyn.

The bus driver, John Moody, testified that on that morning he was driving a bus containing thirty-four passengers. It was approximately thirty-four feet in length with a diesel engine and air-brakes. He said the road was straight and level, and that he had passed a slow vehicle about a quarter of a mile back from where the accident occurred. No other vehicles or obstructions were then between him and the truck. He saw the truck parked on the north shoulder of the highway, he testified, but he did not see anybody around it. The truck was parked off the concrete. He first saw it about a quarter of a mile away, at which time he was going between thirty-five and forty miles an hour. After he passed the slow vehicle, he accelerated his speed up to about fifty miles an hour, at which time the child ran out in front of the bus. The bus was about one or two bus lengths, one witness said fifty yards, from the front end of the truck when Moody first saw the child when she ran in front of him from the rear of the truck. He applied the brakes and swerved to the right. He testified he could not turn left because Mrs. Jones and the other children were in the road almost to the center line, and that when the

bus hit the child the right front wheel had left the concrete. Plaintiffs' witnesses testified that the bus was six or seven feet off of the shoulder when Evelyn was hit.

Moody had been driving this route for five years, about twelve times a week, but had never noticed the children around this house. He admitted that he began to pick up speed after passing the slow vehicle a quarter of a mile down the road, and that he saw the truck a quarter of a mile away, but did not notice anyone around or in it. He never slowed his speed until the child ran from in the back of the truck. From the point of impact with Evelyn, the bus travelled for one hundred and fifty feet until halted in the ditch. Moody said that after he had hit the child, he eased up on his brakes in order to avoid turning the bus over, and injuring his passengers. Evelyn's body was knocked off of the gravel shoulder into the ditch on the side of the road. Appellants' witnesses testified that the bus driver did not blow his horn at all. Some of appellee's witnesses stated that he blew the horn after the child ran out from behind the dump truck.

Appellants' position is that Mrs. Jones and the three children debarked from the truck in plain view of the oncoming bus and its driver for a distance of a quarter of a mile, that there was nothing to have prevented the driver from seeing these people as he was approaching the truck, that if the bus driver did not see them he was negligent because he had an unobstructed view, and if he did see them he was negligent because he should have continued his approach toward the truck more slowly instead of speeding up and thereby creating the sudden emergency through his own negligence. Appellee's position is that the bus driver sighted the truck about a quarter of a mile away, but none of the occupants of it were visible, and that the first indication to the bus driver of human presence around the truck was the sudden appearance of Evelyn when she ran from behind the truck and into the path of the bus; that it was then too late for the driver to avoid hitting her, particularly in view

of the fact that the presence of Mrs. Jones and the other two children on the north part of the pavement prevented him from driving to the left of Evelyn; and that Moody was driving with care in approaching the truck and did everything he could reasonably to avoid the accident.

The jury returned a verdict for appellee, and appellants assign as error the giving of two instructions. Instruction Number 5 for appellee was as follows: "The Court instructs the Jury for the defendant, Dixie Greyhound Lines, Inc., that if you believe from a preponderance of the evidence that the appearance of the deceased, Evelyn Jones, if she ran suddenly from behind the parked dump truck onto the highway and into the path of defendant's bus constituted a sudden emergency and placed defendant's bus in a position of imminent peril to said Evelyn Jones without sufficient time for defendant's driver, Moody, to determine with certainty the best course to pursue, defendant is not held to the same accuracy of judgment as would be required of defendant under ordinary circumstances and is not liable for injuries caused by defendant's bus to the said Evelyn Jones when said Evelyn Jones was struck by defendant's bus, even though a course of action other than that which defendant's driver Moody pursued might be more judicious, provided you further believe from a preponderance of the evidence that the defendant's driver, Moody, exercised ordinary care in the stress of circumstances to avoid hitting the said Evelyn Jones."

The instruction undertakes to set forth the so-called "sudden emergency" doctrine. Appellants urge that it is erroneous because it omits the requirement that the emergency must not have been brought about in whole or in part by the appellee, who is invoking the emergency rule. Appellee admits that the instruction covers only the question of negligence after the emergency arose, and says that the first part of this doctrine, that the driver must have used due care to avoid meeting or creating an emergency, is set out by two instructions given to

the appellants, and that even if Instruction Number 5 is by itself erroneous, it is nevertheless cured by two instructions given appellants. One of these instructions given appellants was to the effect that it is the duty of one in charge of an automobile to look ahead and see anything in his line of vision which will affect the use of the highway, and that if the jury believed that there was a failure on the part of appellee's bus driver to use reasonable care in this respect, and that was the proximate cause of the injury, then the jury must find for appellants. The other instruction granted appellants was to the general effect that the driver of an automobile must exercise reasonable care to keep his machine constantly under reasonable control, and that he must be alert for pedestrians and use reasonable care to anticipate their presence in his driving and not to injure them.

We have considered carefully the question of whether the emergency instruction as granted to appellee was cured by the others given appellants. The emergency instruction was erroneous and misleading to the jury under the facts, and is not cured by the general terms of the instructions granted appellants.

The emergency rule is not an exception to the general rule requiring reasonable care. The existence of an emergency is simply one of the circumstances contemplated by the normal standard of care, in seeking to ascertain whether the defendant acted as an ordinarily prudent and careful person would have done under the same circumstances. 5 Am. Jur., Automobiles, Sec. 171. ██ █ Where an actor is confronted with a sudden emergency, the law does not require of him more than it is reasonable to expect of him under the circumstances which confront him. Although the actor cannot be held to the same standard of conduct as one who has had an opportunity to reflect, this does not mean that any different standard is to be applied in an emergency. The conduct required is still that which is reasonable under the circumstances. Prosser, Torts (1941) p. 242. Another consideration in

the present case is the following. ██ ██ "A further qualification which must be made is that some 'emergencies' must be anticipated, and the actor must be prepared to meet them when he engages in an activity in which they are likely to arise. Thus under present day traffic conditions, any driver of an automobile must be prepared for the sudden appearance of obstacles in the street, or of other vehicles at intersections, and his failure to act properly when they appear may be found to · amount to negligence." Prosser on Torts, p. 243; A. L. I. Restatement of Torts, Sec. 296, p. 797.

The basis of the emergency rule is well set forth in 1 Blashfield, Cyc. of Automobile Law and Practice, Sec. 668, pp. 538-546, in which it is stated: "When one is confronted with a sudden peril requiring instinctive action, he is not, in determining his course of action, held to the exercise of the same degree of care as when he has time for reflection, and, in the event that an automobilist suddenly meets with an emergency which naturally would overpower the judgment of a reasonably prudent and careful driver, so that momentarily he is thereby rendered incapable of deliberate and intelligent action, and as a result injures a third person, he is not negligent, provided he has used due care to avoid meeting such an emergency and, after it arises, he exercises such care as a reasonably prudent and capable driver would use under the unusual circumstances, which is usually for the jury.

"In other words, some allowance must be made for the time required for the requisite mental and physical operations of a motorist in applying his brakes or doing whatever else is necessary when an emergency arises."

██ ██ The emergency rule cannot come into operation at all if the emergency was proximately caused by the fault of the driver. A condition precedent to use of this standard is that the driver "has used due care to avoid meeting such an emergency . . ." 5 Am. Jur., Automobiles, Sec. 171, says: "Where the situation of

peril arises because of the driver's own negligence, the emergency rule cannot be invoked in his behalf." This limitation upon the rule was clearly foreshadowed in Mississippi in Vann v. Tankersly, 1932, 164 Miss. 748, 145 So. 642, 644, in which the Court said: "There being no conflict in the evidence as to the emergency, it becomes a question of law to be settled by the court as to whether or not there was an emergency presented to Vann, the driver, which he did not create by his own negligence, and which will excuse him from liability for injuring Tankersly". But in the present case there is a conflict in the evidence as to the issue of the bus driver's negligence vel non in the creation of the emergency. There is evidence which would justify a jury in finding that the bus driver was negligent in creating the emergency. He saw the truck a quarter of a mile ahead on a straight, level road. He did not slow down, but, in fact, had accelerated his speed up to about fifty miles an hour at the time the child ran from the back of the truck.

In the Vann case there was no such conflict in the evidence. The Court there said: "If there had been the slightest negligence in this case bringing about the emergency, then the argument of counsel for appellee that Vann created the emergency would be pertinent and persuasive." ▪▪ ▪ Here there was evidence which would sustain a finding of negligence in the creation of the emergency. An instruction on the emergency rule which omits the requirement that the emergency must not have been caused by the driver's own tortious conduct is misleading and erroneous. We do not think that such cases as Bunch v. McAllister, 1932, 266 Ill. App. 248, correctly state the law with reference to the emergency rule where the evidence would justify a jury finding that the driver's negligence created or helped to create the emergency. More pertinent is Ball v. Witten, 1930, 155 Va. 40, 154 S. E. 547, 549, in which there were somewhat similar instructions to those in the present

case, and the Court held that they were "calculated to mislead the jury". It said, "This instruction was not applicable to the facts and circumstances of the case, because the danger must have become reasonably apparent to the defendant when he first saw the children about 350 or 400 feet in front of him". There the driver admitted that he saw the child far ahead, █ here that is a factual issue which the jury must consider. See also LaGassee v. Quick, 1936, 273 Mich. 295, 262 N. W. 915, 158 So. 552; Avery v. Collins, 1934, 171 Miss. 636, 157 So. 695; Mississippi Central Railroad Co. v. Aultman, 1935, 173 Miss. 622, 160 So. 737, appeal dismissed 296 U. S. 537, 56 S. Ct. 108, 80 L. Ed. 382; 12 Blashfield, supra, Sec. 7702. In 10 Blashfield, supra, Sec. 6745, is a detailed discussion of instructions where the emergency rule is involved, which states that no precedent negligence of the driver in creating the emergency is a "necessary" part of the instruction. A. L. I., Restatement of Torts, Sec. 296 states the rule as follows: "In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency not caused by his own tortious conduct which requires rapid decision is a factor in determining the reasonable character of his choice of action." Prosser, Torts (1941) pp. 242-243 is even more definite: "The 'emergency' doctrine is applied only where the situation which arises is sudden and unexpected, and such as to deprive the actor of all opportunity for deliberation. Furthermore, it obviously cannot serve to excuse the actor when the emergency has been created through his own negligence, since he cannot be permitted to shield himself behind a situation resulting from his own fault." █ Where there is a legitimate issue of fact, as here, as to whether the driver's own tortious conduct caused the emergency, a negative finding on that issue must exist before the diminished standard of care of an emergency can be applied. For these reasons Instruction Number 5 for appellee was misleading, clearly erroneous, and prejudicial, and does not come

within the rule that other instructions may cure an erroneous one. 53 Am. Jur., Trial, Secs. 836-838.

The other instruction complained of by appellants was as follows: "The Court instructs the Jury for the Defendant, Dixie Greyhound Lines, Inc., that if you believe from a preponderance of the evidence that the plaintiff Burnette Jones failed to exercise the care and supervision over the said Evelyn Jones immediately prior to, and at, the time of the accident which an ordinary prudent mother would have exercised under the circumstances and that such failure was the sole proximate cause of the injury and death of the said Evelyn Jones, then you must find for the defendant, Dixie Greyhound Lines, Inc." This instruction was not warranted by the evidence in this case. The present record does not reflect that Mrs. Jones was negligent. Certainly a finding by the jury that she was negligent, and that that was the sole proximate cause of Evelyn's death would be against the overwhelming weight of the evidence. We do not think this instruction should have been given. Mrs. Jones got out of the truck with a baby in one arm and holding a child by the other hand. She called to Evelyn to stay with her and apparently did everything she reasonably could have done under the circumstances in controlling the child. In other words, this instruction was improperly granted because it was not based on the evidence. An instruction which is not applicable to the facts of the case is erroneous and should not have been given. Gulf, Mobile & Ohio R. Co. v. Smith, Miss., 50 So. (2d) 898; New Orleans & N. E. Railroad Co. v. Williams, 1909, 96 Miss. 373, 53 So. 619; 53 Am. Jur., Trial, Sec. 580.

The case is therefore reversed and remanded for a new trial.

Reversed and remanded.

PER CURIAM.

The above opinion is adopted as the opinion of the Court and for the reasons therein indicated the case is reversed and remanded.