COLLINS BAKING CO. *v*. WICKER.

(Division A.  May 30, 1932.)

[142 So. 8.  No. 29995.]

R. L. Nichols, of Forest, and **Enochs & Enochs**, of Jackson, for appellant.

266

Frank F. Mize, of Forest, for appellee.

270

**McGowen, J.**, delivered the opinion of the court.

The appellant, Collins Baking Company, was sued by John Wicker, the appellee, for damages growing out of a collision between the bread motortruck of appellant and the Ford car of the appellee, and the trial resulted in Wicker recovering a substantial sum, from which the Collins Baking Company appeals here.

The essential facts are that on December 31, 1930, one Gardner was driving a motortruck on a state highway towards Meridian between Forest and Lake. The motortruck was laden with bread, pies, and cakes on shelves therein. Wicker was driving a Ford car in the same direction en route to Lake, and when about two and one-half miles from the scene of the collision came in sight of the motortruck and followed it for a distance of two or two and one-half miles until the bread truck went upon a bridge twenty-five feet long and twelve feet wide, on which were runners placed lengthwise on which the wheels of cars were to run while crossing the bridge. Wicker had sounded his horn two or three times as notice to the driver of the truck that he desired to pass, and on each occasion the driver of the motortruck would speed up and did not yield the road for the rear car to pass.

According to Wicker's testimony, both cars were running at a speed of twenty to thirty miles, and he was trailing at a distance of from twenty to thirty yards to the rear of the motortruck. He testified that when the motortruck reached the center of this bridge it abruptly stopped, and, although Wicker threw on his brakes, he did not stop his car, but ran into the rear of the bread truck. As explained by him, when he hit the motortruck in the rear, it had reduced its speed to about that of a team of mules drawing a wagon. Wicker said he traveled that road often, and was familiar with the

bridge, and that when a car was on the runners, in the center thereof, there was not room for another car to pass, and that there were no guard rails on the side of the bridge. Wicker suffered certain injuries, a broken rib, etc., from the collision, although he told Gardner, at the time, that he was not hurt, not ascertaining his injuries until some weeks later. He testified that the driver in front gave no kind of signal of his intention to stop.

Gardner, the driver of the motortruck, testified that it was a cold day in December, his windows being up, and that his car had a rear stop sign which worked automatically as the foot brake was used, which rear stop sign was working the night before the collision. He further testified that he had the motortruck under control before reaching the bridge, and that, because the bridge was rough, he could not pass over it at a rapid rate of speed, that he slowed down as he approached it, in order to avoid wrecking his cakes and pies, and that he did not know there was a car behind him, there being none in vision in front of him. His truck rolled seventy-five feet after being struck in the rear by Wicker's car.

Instructions Nos. 1 and 2 are as follows:

"No. 1. The court instructs the jury for the plaintiff that if you believe, from the preponderance of the evidence in this case that the driver of defendant's truck knew that plaintiff was following and approaching his truck in close proximity from the rear, then it became and was the duty of the driver of defendant's truck to hold out his hand, or give other signal, of his intention to stop his truck on the bridge, if you believe that he suddenly stopped his truck on the bridge; and if you believe from a preponderance of the evidence that the driver of defendant's truck, knowing that the plaintiff was approaching in his car in close proximity from the rear, suddenly stopped his truck upon the bridge without holding out his hand, or giving some other signal, of his intention to stop his truck on the bridge, and that

the sudden stopping of defendant's truck by the driver of said truck, if you believe he stopped without giving such notice, was the proximate cause of plaintiff's injury, then you must find a verdict for the plaintiff.''

''No. 2. The court instructs the jury that if you believe from the preponderance of the evidence in this case that the place where the collision occurred was frequently traveled by automobiles or other vehicles, and that the driver of defendant's truck had reason to believe that an automobile was approaching him from the rear, and did know that plaintiff's automobile was approaching him from the rear, then the driver of defendant's truck was under duty to hold out his hand, or give other signal, of his intention to stop his truck on the bridge, if he stopped on the bridge.''

The question of negligence was submitted to the jury, and resulted in a substantial verdict for Wicker, from which the Collins Baking Company appeals here.

1. It is insisted by the appellant that, under the facts detailed, it was entitled to a peremptory instruction.

According to the evidence offered by the appellee, neither of the parties seemed to have regarded section 5571, Code 1930, which requires that the speed of vehicles shall be reasonable and proper, having due regard to the traffic on highways and the safety of the public, and that such vehicles shall be under control in traversing a bridge, and at all times. We are of the opinion that by control of a car, is meant that the driver thereof shall have the ability to stop readily and easily.

On the testimony of Wicker, it does appear that he did not have his car under control within the purview of the statute as he approached this bridge; but his testimony is to the effect that the car in front of him stopped suddenly, reducing its speed from thirty miles an hour to the speed of a mule team, and that therefore he was caught off his guard, without warning and time to stop his car.

This conflict of testimony, together with the question

of whether or not the driver of the motortruck exercised ordinary care at and just immediately before the collision, was for the determination of the jury, and we do not think there was error in submitting the case to the jury.

2. As to the instructions set forth above, it is assigned as error that the court peremptorily charged the jury that, under the circumstances, as a matter of law, it was the duty of the driver of the bread truck to hold out his hand, or otherwise warn those in the rear in close proximity to him, as to his intention to stop.

Both of these instructions are subject to the criticism that the court held, as a matter of law, in the given state of facts, that it was the duty of the driver of the leading truck to give a signal or warning to those in the rear.

Each case is decided and settled by its own circumstances. In the case at bar, it was a question of fact, not a question of law, for the determination of the jury and not for the court, as to whether or not a prudent man would ordinarily be required to give a signal to one known to be in the rear, while driving a motor vehicle on a highway at a time when it was not crowded with traffic.

It is generally the rule that questions of negligence are dependent upon the circumstances of the case, and generally a question of fact for the jury. Of course, to have given a signal, under the conditions here detailed, would have been commendable, but there is no statute requiring it, and it is generally considered that the main duty of the driver of a motor vehicle is to keep a lookout ahead, using his hands to control his car. The driver in the lead is not required to keep a vigilant look out for drivers trailing him, because he could not look in front and in the back at the same time.

In the case at bar, the driver of the motortruck was upon the bridge which had no guard rails, and which had elevated runs more difficult to negotiate than an ordinary bridge. He was, however, bound to use ordinary

care for those in the rear, because section 5576, Code 1930, requires motor vehicles designed for carrying freight to be equipped with mirrors so placed as to enable the driver to see to the rear. It does not clearly appear from the record just what position the Wicker car was in immediately before the collision. It does appear that the motortruck had a mirror in the position usually carried by such class of motortrucks.

In giving these instructions, the court should have permitted the jury to say as to whether or not a prudent man, under the circumstances, might have anticipated (assuming that he knew that there was a car trailing him in close proximity) that a warning or signal should be given of his intention to suddenly stop.

This is a case wherein reasonable men might differ as to whether or not it would be negligence to fail to give a signal to cars in the rear, and it was for the jury to decide as to the standard of duty to be required of the driver of a motortruck situated as Gardner was in this case. It is a case for especially calling into requisition the judgment of the jury, relying and depending upon the general knowledge of men, and their judgment and experience should have been called into play in this case, rather than that of the judge.

From the appellee's standpoint, it cannot be said, as a matter of law, that the inference of negligence must inevitably follow from the conditions and circumstances attending this case in failing to give a signal.

The rule which we have applied is found aptly stated in Southern Ry. Co. v. Floyd, 99 Miss. 519, 55 So. 287, 288, as follows:

"What amounts to negligence, as we have already seen, is a question of law. It is for the court to say, in a majority of instances, what is, and what is not, negligence as an abstract proposition. When, therefore, the facts of a given case are undisputed, and the inferences, or conclusion to be drawn from the facts, indisputable, when the standard of duty is fixed and defined, so that

a failure to attain it is negligence beyond cavil, then contributory negligence is a matter of law. . . . .

"Where the facts are conceded, but the inference in regard to negligence is still doubtful, depending upon the general knowledge and experience of men, it is the judgment and experience of the jury, and not the judge, which is to be appealed to."

These instructions were erroneous, and were peremptory in their nature, and took from the jury the right to say whether or not an inference of negligence should be drawn from the acts of the appellant's driver in this case in failing to give any kind of signal. This error is not cured, and we feel that this case is so close on the facts as to require another trial.

These instructions are criticised further because of the use of the word "stop"; it being contended that the witness explains that he meant the car had decreased its speed suddenly to that of a mule team. The witness is bound by the estimate, although he did say, in various places, that the "car stopped," but no doubt on another trial this criticism will be obviated.

We have considered the other errors assigned, and think they are without merit.

Reversed and remanded.