## MOSER v. HAND et al.

### No. 7956.

Circuit Court of Appeals, Fifth Circuit.

Feb. 6, 1936.

Gabe Jacobson, of Meridian, Miss., for appellant.

Marion W. Reily, of Meridian, Miss., for appellees.

Before FOSTER, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This was an action by the surviving parents and the surviving brothers and sisters of John Luther Hand, deceased, against appellant to recover damages for the death of the decedent, a child three years of age, while he was walking in an easterly direction along a described concrete highway, the death being attributed to appellant's negligence in so operating an automobile, moving in an easterly direction, as to strike and fatally injure the decedent. The appellant pleaded the general issue. Upon the conclusion of the evidence, the court directed the jury to render a verdict for the plaintiffs (appellees here), and, in instructing the jury as to recoverable damages, stated that the jury could include in the damages awarded "the present cash value of such services as you think, under the evidence, has been shown that the child might have rendered to the father and mother until he arrived at twenty-one years of age, less such cost and expense that are necessarily incidental to the rearing of the child." There was evidence to the following effect: The deceased's father, R. L. Hand, and his family, in September, 1933, lived on a farm in Newton county, Miss. At the time of the trial in March, 1935, the father was forty-five years of age, the mother was forty-four years of age, and their children, three boys and five girls, ranged in ages from three to sixteen or seventeen years. At the time of his death in September, 1933, the deceased was three years, two months and twenty-eight days of age. He was healthy, bright and affectionate. The following are extracts from the bill of exceptions:

"The Hand farm, the size of which is not disclosed by the testimony, was located on the north side of the concrete highway running from Meridian, Mississippi, to Jackson, Mississippi. It was about one mile East of Lawrence, Mississippi, and about three miles West of Newton, Mississippi. On the North side of the highway there were no other houses either East or West of the Hand home for at least a quarter of a mile. The Hand residence was located 197 feet from the North line of the highway. South of the highway, in this locality, the right of way of the A. & V. Railroad runs parallel with the highway. On the south side of the right of way of the A. & V. Railroad, and about 200 feet West of the Hand residence, a residence occupied by the family of C. M. Tillman was located. Some distance East of the Tillman residence, and on the South side of the A. & V. right of way a residence occupied by Mrs. Lizzie Cooper was located. Both of these homes sat back from the South line of the A. & V. Railroad right of way about 150 feet.

"The highway right of way, at the point involved, is 60 feet wide. The used portion of the highway is concrete and 20 feet wide, with shoulders on either side of the concrete about three feet in width. The road way is straight for a half mile or more on either side of the Hand residence. Immediately in front of this residence the highway is flat, and about 50 feet west of the walk way leading from the highway to the Hand residence the highway begins to descend toward the west, the grade being 3.4 per cent. At a point about 50 feet East of the said walk way and going East the highway begins to descend, the grade of which is 2.7 per cent. Immediately in front of the Hand home, in constructing the highway, a cut was made. On the North side of the highway the surface of the ground is 5½ feet higher than the surface of the road way. On the South side the surface of the ground is 6½ feet higher than the surface of the roadway. Leading from the North edge of the North shoulder of the highway up

to the Hand yard, and to a walk way which extended up to the Hand residence, steps had been constructed, and were in use, in going to and from the highway and to the Hand residence. About two feet West of these steps, and on the North side of the highway, a mail box was located. A short distance East of the steps from the highway to the Hand yard was a drive way, which leads from the highway and up along by the Eastern side of the Hand home.

"There was no testimony as to any natural obstruction on the highway obstructing the vision for one-fourth of a mile to the West of the scene of the accident, but, the grade was as shown hereinbefore.

"E. J. Moser, plaintiff in error, testified that on the date of the trial he was 83 years of age and lived in Memphis, Tennessee. He had been driving automobiles for a period of approximately 30 years. His vision was good and he did not use glasses, either for reading or driving. On September 26th, 1935, Moser was making a business trip in his Buick roadster from Hazelhurst via Jackson to Meridian, Mississippi. He was traveling East from Lawrence, Mississippi, shortly after 6 P. M. and while day light prevailed over territory with which he was unfamiliar, when the accident complained of in the declaration in this case occurred.

"Five of the R. L. Hand children, three little boys and two little girls, had been playing at the home of C. M. Tillman on the afternoon of September 26th, 1933. Two of the little boys had gone home and left two of the little girls and a little boy, John Luther Hand, still playing. The children had been playing with a discarded automobile casing. About ten or fifteen minutes after the little boys had gone home the other three children started home. The oldest of these children, Bonnie Belle Hand, was about eleven years of age at the time. * * * In order to go from the Tillman home to the Hand home it was necessary to use a driveway, which ran from the Tillman home to the highway. This driveway crossed the A. & V. Railroad tracks and right of way and intersected the highway about 200 feet West of the steps leading to the Hand front yard. When the children left the Tillman home to go to their home C. M. Tillman was in his front yard. Mrs. C. M. Tillman had been watching the children play in her yard, but when they left for their home she saw them proceed out toward the highway and turned around and went into the house. Mr. Tillman watched them out on to the highway. This last group of children, including John Luther Hand, carried the discarded automobile tire with them. According to Bonnie Belle Hand, Doris rolled this discarded tire ahead of John Luther and Bonnie Belle. According to Mr. and Mrs. Tillman Bonnie Belle rolled the tire, the tire being rolled as a child ordinarily rolls a hoop. According to Bonnie Belle Hand she was holding John Luther by the hand and they were walking near the North edge of the concrete portion of the highway. Bonnie Belle off the concrete and John Luther on the concrete."

When about 400 feet west of the Hand residence, appellant passed a wagon which was going in a westerly direction. That wagon was loaded with cotton seed. Two of the several persons in the wagon were playing in the seed, sitting in the back part of the wagon facing easterly. According to the testimony of those two persons appellant's automobile, going easterly on the right-hand or south side of the highway, was traveling about fifty miles an hour when it passed the wagon. According to appellant's testimony the automobile was traveling about thirty miles an hour. Another automobile, a Chevrolet, was traveling in an easterly direction and ahead of appellant's car. The Chevrolet car was traveling very slowly, variously estimated as moving four to ten miles an hour. According to appellant's testimony, when he passed the wagon, and until he turned to the left to pass the Chevrolet, the left wheels of the Chevrolet on its left or north side were, about a quarter of the width of that car, north of a black line which ran east and west along the center of the concrete portion of the highway, that car being straddle of the black line. Appellant stated:

"I made a short turn, not more than fifteen feet from him, when I made up my mind, and I had to turn short to get around the car on account of his going so slow. I was watching close so I wouldn't scrape his fender, and when my front wheel was even with his back wheel there, that child's head was in front of my lamp; the child was about two feet on the concrete."

"He did not see John Luther before his front wheels were even with the back wheels of the Chevrolet automobile because

the Chevrolet was directly between Moser and the child."

The following is part of appellant's cross-examination:

"Q. Tell the jury, as you approached the place where he was, when you were as far as from here to the back of the building from him, tell the jury why you didn't see him? A. Because the other car was directly between me and the child.

"Q. The other car was traveling straddle the black line? A. Yes, sir.

"Q. All the way up the road? A. As long as I saw it.

"Q. When did you first notice that it was straddle of the black line? A. When I first came back of him.

"Q. That car in front of you didn't prevent your seeing the child as far as a hundred yards down the road? A. The child was some distance up the road and this car was between us.

"Q. I am trying to find out why you didn't see the child a hundred yards down the road as you came up there? A. If you get down the road with another car moving in the same direction in the middle of the road, you would see that you couldn't see."

A Mississippi statute (Code Miss.1930, § 5569) forbids the operation of a motor vehicle on a public highway, outside of any municipality, at a greater speed than forty miles per hour. Another Mississippi statute (Id., § 5574) provides for a person operating a motor vehicle, on overtaking another vehicle, passing on the left side thereof. If the death of the deceased was caused by the wrongful or negligent act or omission of appellant, appellees were entitled to recover such damages as they severally suffered in consequence of such death. Id., § 510. Under the evidence it was open to the jury to find that when appellant was approaching the wagon going in the opposite direction that wagon obstructed his view of the part of the highway where the deceased then was; that, upon appellant getting alongside and past that wagon, the Chevrolet car ahead, by reason of part of it being north of the black strip marking the center of the concrete highway, was between the appellant and the deceased while appellant was traveling on the concrete south of that strip and until after he had turned his car to the left and got north of the Chevrolet car so as to be able to see in an easterly direction along the concrete; that appellant did not, and could not, see deceased prior to the time when the front wheels of appellant's car were even with the back wheels of the Chevrolet car; that, before the appellant saw the deceased, appellant had no reason to anticipate that a child or any one was or would be on the highway between the Chevrolet car and the northern edge of the concrete; and that up to and including the time when appellant's car struck the deceased, appellant was proceeding along the highway in a lawful manner and using ordinary and reasonable caution for the safety of others. The evidence was such that reasonable men might conclude therefrom that appellant was not negligent or at fault in causing the death of the deceased. The conclusion that appellant wrongfully or negligently caused the death of the decedent was not required by undisputed evidence. The evidence was such that the question whether decedent's death was or was not so caused was one for the jury. This being so, it was error for the court to instruct the jury to render a verdict in favor of appellees. Collins Baking Co. v. Wicker, 166 Miss. 264, 275, 142 So. 8; Rhodes v. Fullilove, 161 Miss. 41, 134 So. 840; Vann v. Tankersly, 164 Miss. 748, 145 So. 642.

 Mississippi decisions are to the effect that, where the death of a minor is wrongfully caused, the parents of the minor may recover of the wrongdoer such amounts as evidence shows they had a reasonable expectation of receiving from the decedent during their respective lives if the survivor had continued to live. Avery v. Collins, 171 Miss. 636, 157 So. 695, 158 So. 552; Gulf Refining Co. v. Miller, 153 Miss. 741, 121 So. 482. The record in the instant case contains no evidence furnishing any basis for a finding that the decedent's parents had a reasonable expectation of receiving anything from the decedent if he had continued to live. The record does not show that there was any evidence on the subject. Substantial damages for the loss of a deceased minor's services are not recoverable by the minor's parents in the absence of evidence of the reasonable value of such services. In the absence of any such evidence, the above set out parts of the court's instructions to the jury as to the amount recoverable by the decedent's parents on account of their loss of decedent's services was erroneous. The judgment is reversed.