Evans Motor Freight Lines *et al. v.* Fleming *et al.*

(Division B. Jan. 30, 1939. Suggestion of Error Overruled Feb. 27, 1939.)

[185 So. 821. No. 33499.]

Leathers, Wallace & Greaves, and Eaton & Eaton, all of Gulfport, for appellants.

Currie & Currie, of Hattiesburg, for appellees.

Argued orally by **R. A. Wallace**, for appellant, and by **Neil T. Currie** and **Alexander Currie**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellees, J. W. Fleming and his children, brought suit against the Evans Motor Freight Line, operated under that trade name by the proprietor, Mrs. Dorothy Irma Evans, and J. P. Miles and Joe N. Miles, for the death of Eva Fleming, wife of J. W. Fleming, and mother of the other plaintiffs. In the early evening of December 20, 1937, after dark, the deceased, Mrs. Fleming, accompanied by her son, J. W. Fleming, Jr., and her daughter, Margie, and by her husband's sister, Marie, was walking south along the west side of highway 49, which was the right hand side as they were facing, about a mile and a half north of Brooklyn, Forrest county, when she was struck and killed by a 1937 Chevrolet coach, which was being driven southward along the highway by J. P. Miles, with his mother, Mrs. Joe N. Miles, on the seat beside him. At the place where the accident occurred the highway was paved for a width of twenty feet with a material known as black-top, abutted on each side by a berm or shoulder, of dirt and gravel, about five feet wide, and substantially on the same grade as the surface of the pavement. Two trucks belonging to Mrs. Evans were traveling north along highway 49, in the direction of Hattiesburg, the foremost truck driven by Howell Smith, and the one behind by Jack Cook, employes of Mrs. Evans. The foremost truck, which was some seven hundred feet ahead of the other truck, consisted of a one and a half ton low-geared Chevrolet motor truck chassis, to which was attached a large, heavy semi-trailer, seven feet four and a half inches wide; and both trucks were equipped with mechanical speed governors.

It appears that in crossing the hill or elevation, just before the accident occurred, Miles, driving the Chevrolet, and proceeding south, was blinded by the lights of the appellant's truck. According to the proof, which was accepted by the jury, the truck was traveling north, but on the west side of the highway, instead of the east

side; and Miles, the driver of the Chevrolet, testified that the truck, as they approached each other, did not turn to the right, and get on the east side of the road, but continued on the left side, meeting the car driven by Miles, going in the opposite direction on his right side of the road. In order to avoid a collision with the truck, Miles swerved his car to the right, and off of the paved part of the highway, striking and killing Mrs. Fleming and her son, whom he claims that he did not see, owing to the blinding lights of the truck, until he was within five or six feet of them—or within a very short distance; and that he was traveling approximately forty miles an hour.

The persons who accompanied Mrs. Fleming and her son testified that as the Chevrolet car came over the hill they moved to the berm or shoulder of the highway, off the pavement; and that they saw the light of the Chevrolet on Mrs. Fleming and her son as it approached.

There was testimony to show that the Chevrolet passed the truck at about the point where the deceased was killed; that the trucks were equipped with dimmers, the drivers of the trucks testifying to have dimmed the lights, while others testified that the lights were not dimmed. The two trucks traveled together, being required to remain in contact with each other—the hindmost truck to signal the one in front by certain flashes of the lights, to indicate that it should stop. The driver of the hindmost truck testified that the two trucks did not stop immediately after the accident, for the reason that the foremost truck had gone over the top of the hill, and he followed, to stop it; which he claimed to have done, and that the two drivers returned to the scene of the accident.

The testimony of Miles and his mother was to the effect that when they felt the impact of the car with the body, it was brought quickly to a stop, and they returned to where the deceased lay, off the paved part of the high-

way, Mrs. Fleming's head lying near the paved part, but on the shoulder or graveled part of the highway.

There was a judgment for the plaintiffs against both defendants—Mrs. Evans, operating as the Evans Motor Freight Line, and J. P. Miles; but there was a peremptory instruction for Joe N. Miles, who was not in the Chevrolet car when the accident occurred. The latter owned the car, but it was being driven by his son, J. P. Miles, nineteen years of age, who was accompanied by his mother the wife of Joe N. Miles, who had been to the city of Hattiesburg on a shopping mission, and was returning home.

The testimony in the case is voluminous. The main assignment of error is that there was no liability on the part of Mrs. Evans, even though her trucks were being operated on the wrong side of the road, because, it is argued, the fatal accident was produced by the Chevrolet car, driven by Miles, as an independent intervening cause, and was solely the result of negligence on the part of Miles; that there was no proper connection between the negligence of the truck drivers and the death of Mrs. Fleming and her son which would cause liability on the part of Mrs. Evans, as owner of the trucks being operated by her servants or employes.

The appellant, Mrs. Evans, admits that the evidence establishes, or is sufficient for the jury to find, the following: "(1) The highway where the fatal accident happened runs generally north and south; (2) the highway is straight for at least one-quarter mile north and one-half mile south of the place of the accident; (3) the highway right of way between the east and west boundary lines is about 50 feet wide, with a slab of black-top paving material 20 feet wide in the center, which is abutted on each side by a berm or shoulder about five feet wide, making that part of the highway devoted to vehicular use 30 feet wide; (4) there is a crest of a hill at a point on the highway estimated by the witnesses for the plaintiffs and the defendant, J. P. Miles, to be from

450 to 1,000 feet north of the place of the accident, from which point the highway slopes toward the south, to a point a great distance south of the place of the accident; (5) at the time of the accident there were no obstructions within the right of way of the highway from the crest of the hill to a point more than one-half mile south; (6) the plaintiffs' decedent and her companions were walking south on the west side of that part of the highway devoted to travel, in the nighttime, at a point estimated by the witnesses for the plaintiffs and the defendant, J. P. Miles, to have been from 450 to 1,000 feet south of the crest of the hill; (7) at the same time, the defendant, J. P. Miles, was driving a new Chevrolet automobile south on the west side of the paved portion of the highway at a rate of speed estimated by him to have been 40 miles per hour, and this automobile was, then, proceeding over the crest of the hill in the same direction the plaintiffs' decedent and her companions were traveling; (8) at the same time, two of the appellant's motor trucks, one a considerable distance behind the other, the foremost one being driven by Howell Smith and the hindmost one being driven by Jack Cook, both displaying brilliant headlights, were traveling north on the west side of the pavement—traveling to the west of the center or thread of the pavement—and were approaching the plaintiffs' decedent and her companions from the south; (9) the deceased and her companions were well aware of the approach of the automobile from behind them and the approach of the appellant's trucks in front of them; (10) when the Chevrolet automobile reached a point about 50 feet north of the crest of the hill, the driver observed the rays of the headlights displayed by the oncoming trucks and, at the very instant he mounted the crest of the hill with his automobile, he looked directly into the headlights displayed by the foremost truck, and was blinded by the rays of light radiated by them; (11) the plaintiffs' decedent and her companions were, then, walking south on the west side of the pavement between

the automobile approaching from the north and the trucks approaching from the south, and the rays of light radiated by the headlights displayed by the two vehicles illuminated all of the area on the highway lying between them; (12) the defendant, J. P. Miles never saw the plaintiffs' decedent and her companions until his automobiles was in the act of striking her and her son, who were killed by it, even though she was, then, well within the area on the highway that was illuminated by the rays of light radiated by the headlights on the foremost approaching truck; (13) from the time the automobile driven by the defendant, J. P. Miles, mounted the crest of the hill behind the plaintiffs' decedent and her companions to the time when it struck and killed her and her son, it and both of the appellant's trucks were traveling to the west of the center or thread of the pavement, and neither of the trucks turned to its right, thereby leaving, unobstructed, 15 feet of road lying east of the center of the pavement; (14) notwithstanding the obstruction of the west side of the pavement by the foremost truck which was in plain view of the defendant, J. P. Miles, the said defendant continued to drive his automobile with unslackened speed ahead on that side of the pavement, until he met it, when he, then, swerved his automobile to his right, placing the right wheels of it on the west berm or shoulder, and, while he was in the act of thus passing the truck, his automobile struck and killed the plaintiffs' decedent and her son, who were then walking on the west berm or shoulder, from which point his automobile continued forward more than 100 feet before he could bring it to a stop; (15) the defendant, J. P. Miles, traveled about two-thirds of the distance between his automobile, when it reached the crest of the hill, and the place on the highway where the foremost truck was traveling about one-third of such distance; and (16) at the time the defendant, J. P. Miles, killed the plaintiffs' decedent, there was sufficient unobstructed space on the highway lying east of the cen-

ter of the pavement for two automobiles such as he was operating to have passed safely.''

Conceding, as the appellants do, the establishment of these propositions, which in our judgment the evidence is sufficient to establish, there was liability against Mrs. Evans, for the reason that the negligence of her drivers was the proximate cause of the swerving to the right of the Chevrolet car, to avoid a collision which was otherwise inevitable. While J. P. Miles was negligent in that he did not slow down and stop when the lights of the truck blinded him, and in proceeding at a high rate of speed in a blinded condition, and in not seeing the deceased traveling along the right side of the highway, and in the direction in which they were traveling, it cannot be said that the negligence of the appellants was insulated by the negligence of Miles; nor can it be said that the negligence of the appellant was not a contributing, proximate cause of the death of Mrs. Fleming.

The court below gave an instruction at the instance of the appellant, that the negligence of the deceased, in being on the wrong side of the highway, should be considered, and should diminish the damages, if the jury found the appellants to be liable, or guilty of negligence, in the proportion borne by the negligence of the deceased to that of the appellants.

The negligence of the deceased, under the facts of this record, was very slight, consisting only in being on the righthand side of the highway, instead of the lefthand side, but off of the traveled part of the highway, on the berm or shoulder, where it was not expected, or at least was unlikely, that any injury would be inflicted on persons at that point by automobiles passing along the same side of the highway in the same direction, because the paved part of the highway was ample for the passage of the vehicles, without leaving the pavement.

We therefore think that the jury were warranted in finding negligence and liability therefrom against the appellants. We have examined the instructions given

to both parties, and think that, taken together as they must be, they give the jury the law applicable to the case, and that there was no error in refusing other instructions requested by the appellant and refused by the court. Neither do we think there was error in the instructions given on behalf of the plaintiff. We have examined all the assignments of error, which we think are not well taken, and do not deem it necessary to discuss any of the assignments of error not discussed in the foregoing.

The judgment of the court below will, therefore, be affirmed.

Affirmed.