## MISSISSIPPI POWER & LIGHT CO. *v.* LEMBO.

(In Banc.   Nov. 24, 1947.   Suggestion of Error Overruled Jan. 12, 1948.)

[32 So. (2d) 573.   No. 36598.]

**Pollard & Hamner**, of Greenwood, for appellant.

**Bell & McBee,** of Greenwood, for appellee.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

Appellant on January 14, 1944, owned a passenger car, or coach, which had been in use at Indianola by its employees in the progress of what is denominated in the record as a "Don't Waste Gas Check Up Campaign" referring to natural gas. The campaign was through and done at the time of the events of this case. The immediate managing representative of appellant had departed for Jackson, leaving the car in custody of another employee of the company, Miss Aldridge, but, as far as we are able to gather from the record, without any instructions as to specific dealing with it. In it she had driven her said immediate superior to the bus station.

The company's business was over, as stated, and Miss Aldridge drove the car to a cafe, where Miss Waites, another employee of appellant, was eating supper. Miss

Aldridge joined her, and the repast finished, they started to Itta Bena to pick up a personal friend, who telephoned that there had been a wreck, and asked them to come and get her. It is in the testimony that these two ladies used this car only "to work with," but on this occasion, it seems clear, that they were about their own private mission, entirely apart from any errand for their employer, the appellant, and without its knowledge or direction.

Although the company had filled the car with gasoline the day before, and it apparently had ample fuel at the time, the car stopped practically on the proper lane of the highway about half way between Indianola and Itta Bena because of fuel exhaustion. Only one front wheel was on the shoulder. It was a very dark and rainy night. In spite of the falling rain, Miss Waites, who was driving, alighted and flagged a passing car, which stopped in its proper lane, after going about thirty yards beyond the stalled car, in order not to obstruct traffic. When this occurred, Miss Waites saw lights approaching from Indianola and she ran to stop whatever vehicle it was, if possible. These lights proved to be on the truck of appellee, driven by his employee, about the master's business, and was advancing at the rate of approximately thirty-five miles per hour. Miss Waites testified that both the tail and headlights of appellant's car were burning. The truck driver denied that they were. He said he did not discover the stalled car until he had crashed into it from behind, testifying that he was blinded by the headlights of still another car coming from the opposite direction.

Since the wrecked car was not being used about the master's business, or with its knowledge or direction on this mission, but was manifestly being driven by the two women occupants on a personal errand to help their friend, appellant cannot be held to any negligence whatever for what happended at the scene of the wreck or the failure of the supply of gasoline. Bourgeois v. Mississippi School Supply Co., 170 Miss. 310, 155 So. 209, on sugges-

tion of error. The case at bar is stronger for appellant than the case was for appellee there, since there appellee's employee was driving the master's truck to pick up a fellow employee to take him back to work, but as a matter of personal accommodation only. Here, the lady whom Miss Aldridge and Miss Waites were personally driving to accommodate was not even a fellow-employee but merely their friend.

Since appellant was not guilty of negligence on its part, the next question is as to the negligence, if any, of the driver of appellee's truck, since he was then and there admittedly operating it upon the master's business. As he approached the scene at about thirty-five miles an hour, it was very dark, the rain was falling heavily, there was a car stopped in each lane of the highway (no claim is made that the first car hailed by Miss. Waites did not have its lights burning), and there was still another car coming from the opposite direction to that of appellee's truck. If the driver of the truck had been alert, responding to the reasonable caution demanded by the extreme darkness, the heavy rain, the stopped cars, the woman waving her arms on the highway, and the glaring headlights of the car coming toward him and blinding him by its headlights in his face, and against which the stalled car must have presented a silhouette, he would or should have gotten his car under immediate, complete control, preparatory to stopping; or stopped entirely at once. It is difficult to conceive of a reason why Miss Waites or Miss Aldridge would have turned off the lights of their car in their then perilous situation, and Miss Waites denied that they had done so. Miss Aldridge did not appear as a witness.

The glare of the headlights in the eyes of appellee's driver probably prevented his seeing the tail lights of appellant's car. But they were just a detail of the several things then and there that called upon the truck driver to note an unusual situation, and take proper precautions

accordingly, especially the fact that he was blinded by the headlights of the approaching third car.

This case is controlled by B. Kullman & Co. et al. v. Samuels et al., 148 Miss. 871, 114 So. 807, 808, and other similar decisions. In the cited case, this Court stated as the pertinent fact that: "Appellant Michael Kullman testified, and his evidence was undisputed by any eyewitness, that as he entered the intersection of the streets, and while making the turn north into Union street, he was . . . blinded, probably by the lights of Wilson's car coming south; that he did not see Mrs. Sanford, although he was keeping a careful lookout, until he was so close to her that it was impossible to stop before striking her." We said further, "As soon as the driver of the car realized that he could not see ahead on account of being blinded by the lights, he should have taken steps at one to stop his car as soon as he reasonably could, considering the surrounding conditions, including other traffic." The judgment of the lower court there was affirmed, with remittitur. See also Terry et al. v. Smylie, 161 Miss. 31, 133 So. 662. Compare also Western Union Telegraph Company v. Perry, 200 Miss. 469, 27 So. (2d) 688.

We are, therefore, of the opinion that the trial court should have sustained appellant's motion for a new trial on the ground therein assigned, that "the verdict of the jury is contrary to the law and the evidence," that is, the overwhelming weight of the testimony. The judgment of the court below is therefore reversed and the cause remanded for a new trial.

Reversed and remanded.