WILLIAMS *v.* MOSES, d/b/a NATCHEZ USED TANK CO.

No. 40888          October 27, 1958          106 So. 2d 45

*Wells & Collins*, Natchez, for appellant.

454

*Rae Bryant,* Gulfport, for appellees.

HALL, J.

Amy Williams brought this suit in the circuit court against F. R. Moses doing business as Natchez Used Tank Company, and his driver Tyson Reid for personal injuries sustained by her on or about January 30, 1956, and she appeals from a judgment against her based upon the verdict of a jury.

The record shows that Amy was struck by a pickup truck at the intersection of Canal Street, which runs north and south, and the Highway 84 By-Pass, which at that point runs east and west, in the City of Natchez a short distance east of the Mississippi River bridge.

Amy had been to the south of the intersection to visit a sick relative and while returning was crossing the By-Pass highway. At that point there is a flashing light which looking toward the east or west constantly shows a flashing yellow light. The same light shows a constantly flashing red light against the traffic on Canal Street. Under an ordinance of the City of Natchez all vehicles traveling the By-Pass are required by this yellow light

to proceed only with caution. Amy had almost completed the crossing of the By-Pass and was on the north side thereof and within about 3 feet of the curb of the highway, which at the point was wide enough to carry 3 lanes of traffic, and the pickup truck struck her and caused a severe fracture of both bones in the lower part of her right leg just below the knee. Two doctors testified in her behalf as to the severity of the injury and both expressed the opinion that it was permanent. Both said that she was left with a shortening of about one inch in her leg and that she would never recover from it. With this injury she was in the hospital 4 times for a total of 106 days and her hospital and doctor's bills were $2,359 up to the time of the trial, and at that time she had lost $1,237.50 from her regular wages because of the injury.

The accident occurred late in the afternoon just before dark, but the intersection was well lighted so that she could be easily seen. Tyson Reid, the truck driver, testified that he saw her between 15 and 25 yards away. According to the chief of police and a police lieutenant the truck left skid marks on the right side of about 50 to 60 feet, but on the left side such marks were only 8 or 10 feet in length.

At the trial the defendant obtained the following instruction:

"The Court instructs the jury for the defendants that where the driver of an automobile is driving the same at a reasonable speed and has the automobile under reasonable control and is keeping a reasonable lookout, then no liability as for negligence attaches for an injury to a pedestrian who unexpectedly walks or hurries either in front of, or into the front of the automobile when so close thereto the driver by the exercise of due care is unable to avoid a collision, and provided he then exercises reasonable care and in this case, if you believe from the evidence, that the plaintiff was crossing the By-Pass

or Highway 84 from the south to the north along the cross walk located to the west of Canal Street; and that the defendant, Tyson Reid was driving the truck of the defendant, F. R. Moses d/b/a Natchez Used Tank Company, west on the By-Pass or Highway 84 at a reasonable rate of speed and had the same under reasonable control, for the conditions then and there existing, and that when the defendant Tyson Reid was in a position near the cross walk the plaintiff walked or hurried into the path of the defendant's truck and that Tyson Reid then acted as a reasonable person would have acted in trying to avoid an accident, but despite his efforts there was a collision between the defendant's truck and the plaintiff, then it will be your sworn duty to return a verdict straight out for the defendants, even though you may believe the plaintiff received serious injuries as a result of colliding with the defendant's truck.''

Appellant contends that the granting of this instruction was erroneous. Appellee says that it was approved by this Court in the case of Brand v. Tinnin, 190 Miss. 412, 200 So. 588, and that this instruction was copied from that case. As a matter of fact the instruction does not appear in the opinion in that case but we have carefully read the opinion and we do not find that it was anywhere approved by the Court. In fact the Court said that there were about 40 instructions in the case, occupying 43 pages of the record and that it would serve no useful end to discuss all of the instructions, but that taking them all as a whole the applicable law of the case was given to the jury. We have examined the original record in that case and we find that the plaintiff obtained 14 instructions and the defendant 27. The instruction in question in almost identical terms, was granted in that case and was evidently copied by the appellee from Section 771 of Alexander's Mississippi Jury Instructions.

The facts in Brand v. Tinnin, supra, where this instruction was granted, were entirely different from those in the case at bar. There a taxicab struck a man, not at

a public crossing which was controlled by flash signals, but in the middle of a block, and the injured man was walking along the sidewalk and then suddenly turned and started across the street without looking, in violation of a city ordinance of the City of Meridian. It will be noted from the last third of the instruction in question that Tyson Reid then and there acted as a reasonable person would have acted in trying to avoid an accident, but despite his efforts there was a collision between the defendant's truck and the plaintiff and then it was the sworn duty of the jury to return a verdict straight out for the defendants, even though they might believe that the plaintiff received serious injuries as a result of colliding with the truck.

The plaintiff in the lower court obtained the following instruction which, as we see it, is in direct conflict with the above quoted instruction of the defendant:

"The Court instructs the jury for the plaintiff that it is the duty of any one to drive or operate a motor vehicle over and along any public highway at no greater rate of speed than is reasonable and prudent, having due regard to the traffic and use of the highway or so as to endanger the life and limb of any person; that the driver of a motor vehicle does not have the right to a clear and unobstructed highway, but must constantly keep the automobile being then and there driven by him under control, must continue on the alert, must keep a proper lookout ahead and anticipate the presence of other persons and vehicles upon said highway and must, at all times, drive his motor vehicle at such a rate of speed as to enable him to avoid injury to such persons, when they come or, by the exercise of ordinary care, would come within his vision or under his observation."

We think the plaintiff's instruction stated the correct rule which is applicable in cases of this kind. Almost this identical instruction was approved by this Court in the case of Hadad v. Lockeby, 176 Miss. 660, 668, 169 So.

691, and the rule announced therein is in line with many holdings of this Court. This instruction appears as Section 823 of Alexander's Mississippi Jury Instructions. Beginning with Ulmer v. Pistole, 115 Miss. 485, 76 So. 522, and continuing through a long line of cases this Court has adhered to the rule in the above plaintiff's instruction. In Ulmer v. Pistole, 115 Miss. at page 492, the Court said: "As for the law that governs the use of the highways and streets by drivers of cars, it is not difficult to define the principles to be applied with respect to such use. The same general law applicable to the use of all vehicles on public highways applies to automobiles, the substance of which is that a driver must use that degree of care and caution which an ordinary prudent person would exercise under the same circumstances. But this is not all. Recognizing in the motor vehicle an instrumentality equally as dangerous in many respects as the locomotive and trolley car, the law exacts additional precautions from operators. The driver of an automobile must keep his machine constantly under control, he must continue on the alert for pedestrians and others using the streets, and must anticipate their presence. To assume that the way is clear is not his right. The fact that he was unaware of the presence of others in no way extenuates conduct which would have been wantonly reckless, had he known that another person or vehicle was crossing his pathway. Especially must he expect and look out for other vehicles and persons at such places as street intersections and corners, shopping centers, and other familiar places by and through which the main currents of the population habitually pass. It is his duty, and the great majority of city traffic regulations so prescribe, to slow down at street intersections, in order that possible accidents and collisions may be foreseen and averted. It has even been held that the failure to see a pedestrian in the street amounted to negligence." Then the Court cited many authorities which sustained these conclusions.

In the case of Hill v. Columbus Ice Cream and Creamery Co., 93 So. 2d 634, not yet reported in State Reports, we pointed out the effect of conflicting instructions and said:

"The appellee argues that other instructions were granted in this case which correctly stated the law and that we should look to the record as a whole and consider all of the instructions together. When this is done we find that instructions Nos. 5 and 13 are in direct conflict with some of the instructions which were granted. In the case of Wilburn v. Gordon, supra, we said in 209 Miss. at page 48, 45 So. 2d at page 846: 'Appellee contends that we should look at the case as a completed trial, and even though the instructions be technically incorrect, we should refuse to reverse, because the error was not substantial, citing Meridian Sanatorium v. Scruggs, 121 Miss. 330, 83 So. 532; City of Jackson v. Wright, 151 Miss. 829, 119 So. 315; Nelms & Blum Co. v. Fink, 159 Miss. 372, 131 So. 817. We cannot agree that the error in granting these instructions was insubstantial, or cured by other instructions in the record, since they are fundamentally in violation of the comparative negligence statute, and transgress our decisions as to instructions anent negligence.' We are of the opinion that the error in these instructions was not cured by the instructions which correctly announced the law and that for the errors indicated the judgment of the lower court should be reversed and the cause remanded for a new trial."

■■ ■ We are of the opinion that in view of the plaintiff's instruction, which is unquestionably a correct announcement of the law, and the conflict with the quoted instruction of the defendant this case should be tried again under instructions which are not conflicting and which correctly announce the law. Specifically it was Tyson Reid's duty not simply to act as a reasonable person would have acted in trying to avoid the accident but to use such care as a reasonably prudent and capable

driver would use under the circumstances, and to continue on the alert and keep a proper lookout ahead and anticipate the presence of other persons and vehicles upon the highway, and to constantly keep the vehicle under control and to drive at such a rate of speed as to enable him to avoid injury to such persons, when they come, or by the exercise of ordinary care would come within his vision or under his observation. Ulmer v. Pistole, supra, and Hadad v. Lockeby, supra.

Since this case has been pending in this Court Amy Williams has died intestate and Leona Williams was appointed administratrix of her estate on October 2, 1958, and a motion has been filed to revive this cause in her name as administratrix, and said motion will be sustained.

Motion to revive sustained and case reversed and remanded.

*Roberds, P. J.,* and *Lee, Holmes* and *Ethridge, JJ.,* concur.