KETTLE *v.* MUSSER'S POTATO CHIPS, INC., et al.

No. 42918 March 23, 1964 162 So. 2d 243

*Crawley & Ford,* Kosciusko, for appellant.

216

*Crawley, Brooks & Guyton,* Kosciusko, for appellees, Musser's Potato Chips, Inc., and William Louis Matthews.

*G. J. Thornton,* Kosciusko, for appellee, Ben Phillips Bridgewater.

BRADY, TOM P., J.

At approximately ten minutes past twelve midnight on the morning of July 4, 1962, Hiram Kettle, husband of the appellant, Mrs. Annie W. Kettle, telephoned her from Durant, Mississippi, asking her to drive from their home in the Possumneck Community and pick him up in Durant. He is a truck driver with Commercial Carriers of Memphis, Tennessee. Appellant dressed, and proceeded in her 1959 Ford automobile to West, Mississippi, where she turned south on Highway 51 and

had proceeded approximately two and one-half miles south of the Town of West when her car was sideswiped by a car which was proceeding north on Highway 51, driven by a Negro by the name of Lenora Davis, who was under the influence of intoxicating liquor. Davis was traveling with two Negro men, both of whom also were intoxicated. The collision bent the left front wheel of the car being operated by the appellant so that it went off of U. S. Highway 51, which is located on a fill approximately 15 to 20 feet in height, on the east side, and the car driven by Lenora Davis ran down the fill on the west side of said highway and continued until it struck a telephone pole, situated on the right-of-way, the cars coming to rest approximately 625 feet apart. U. S. Highway 51 is of concrete, with blacktop patching, nineteen feet, eleven inches wide, with dirt shoulders five feet, nine inches wide on the east side, and four feet, five inches wide on the west side. The appellant received no injuries from the collision, but her car damage was estimated to be approximately $750, and the damage to Lenora Davis' car was estimated at $500. The damage to appellant's car was on the left front and side and the damage to the Davis car was likewise on the left side and front. The Negro was a resident of Freeport, Illinois. After being forced into a bar pit below the highway, Mrs. Kettle took her pocketbook, a small Chihuahua dog which was accompanying her, and a flashlight, and climbed up the fill and onto the concrete highway. After getting back onto the highway, the appellant crossed over to the west shoulder where she met the defendant, Lenora Davis, approximately 225 feet from her wrecked automobile, and ascertained that he was intoxicated. While Mrs. Kettle was on U. S. Highway 51, or on the west shoulder, the tractor-trailer unit owned by the appellee, Musser's Potato Chips, Inc., which was being driven by the appellee, William Lewis Matthews, as their agent and serv-

ant, and while engaged in the performance of his duties and in furtherance of his master's business, was stopped in the northbound traffic lane of U. S. Highway 51, approximately opposite the point where the appellant, Mrs. Annie W. Kettle, was standing, and where the appellee, William Lewis Matthews testified she was talking to Lenora Davis and the other Negroes. Appellee William Lewis Matthews asserts that he depressed or dimmed the headlights of the truck he was operating, though he did not look to see, nor remember if the red light indicator on the dashboard indicated that the lights were dimmed. He did so because he could see something in the road, and claimed that he dimmed them in order that he might be able to tell more easily what the objects were. He claimed the appellant flagged him down with a flashlight. He saw the appellant and the Negroes, and likewise the evidence in the road where appellant's car had been sideswiped by the car driven by Lenora Davis.

Matthews testified that shortly after he stopped, he saw another vehicle coming, from the north, traveling in a southerly direction, in the southbound traffic lane of Highway 51, and that he called three or four times to the appellant and to the Negroes to get out of the highway before the Negroes did so, but that the appellant waited until the approaching car was right upon her before she endeavored to get out of the southbound lane of traffic, or west lane of traffic of Highway 51. The record shows that the second car using the southbound or west lane of Highway 51 was being operated by the appellee, Ben Phillips Bridgewater, a barber who resides in Memphis, Tennessee, and with him in his car was his wife and two minor children. Ben Phillips Bridgewater testified that the lights of the truck were bright and he dimmed his lights, asking thereby that the lights on the tractor-trailer unit be dimmed also, but that they were not dimmed, and that he was blinded

by the headlights of appellees' tractor. He explained this blindness by saying that he was not exactly blinded but that his vision was obstructed and he could not see any object behind the lights. The appellee Bridgewater testified that when he left the Town of West, Mississippi, he was driving approximately fifty to fifty-five miles per hour, and at the time he struck the appellant, he was traveling thirty-five to forty miles per hour. This speed is borne out by the fact the appellee Matthews testified that the appellant was knocked up into the air at least the height of his truck, which is twelve feet, eight inches high, and that she was propelled over the embankment and down into the bar pit. The evidence shows that she was lying some twenty three feet from the highway proper when her body came to rest at a point opposite and midway or to the end of the truck body. Bridgewater further testified that he did not see Mrs. Kettle whom he contended was in the southbound portion of the highway until he was within approximately twenty-four feet of where she was standing, that he was blinded by the lights of the tractor-trailer, which Matthews was operating. He did not apply his brakes until he saw appellant. He concedes that he was under the duty to keep a proper lookout for objects ahead and other vehicles and persons in his line of travel, and the only reason he could give for striking the appellant, other than his speed and the fact that he was blinded by the tractor-trailer lights was that Mrs. Kettle was in the southbound lane of the highway. Appellee Bridgewater testified that when he first saw the truck, he thought that the truck was moving or running, but stated further that when he got fairly close to the truck and saw that it had stopped, he slowed down by taking his foot off the accelerator, and the first thing he saw was some Negroes standing on the shoulder of the highway and then he hit Mrs. Kettle, and subsequently

ran into the Musser's Potato Chips van in trying to avoid striking her.

Appellee Bridgewater testified that he could not see past the headlights of the truck, and that when he first saw Mrs. Kettle that he was about twenty-four feet north of her and he struck her at a speed of thirty-five to forty miles per hour. Bridgewater admitted that although he could not see beyond the lights of the truck, he nevertheless continued to operate his automobile at that speed. He said that his vision was obstructed by the lights of the truck and admitted that he could not see past them. In one instance, Bridgewater testified that the appellant was standing three or four feet from the highway, that he meant the right shoulder, and then he corrected this statement by saying that she was standing three or four feet into the highway. He explained that the Negroes that he saw were standing on the shoulder of the road in front of the headlights, and that they were the length of the van, some forty to fifty feet north of the Musser tractor-trailer unit. Appellee Bridgewater further testified that he did not apply his brakes until he saw the appellant, and that he pulled into the side of the truck in an effort to avoid striking her. He testified that the appellant was standing about middleway of the van, and that he did not see her until he had gotten out of the glare of the headlights. Therefore, according to his testimony, he had apparently passed the lights of the parked truck belonging to the appellee Musser before he put on his brakes. This is corroborated by appellee Matthews, and Patrolman Howell's testimony regarding the skidmarks. Furthermore, Bridgewater testified that he was aware that some danger might be lurking ahead, but that he didn't apply his brakes until he actually saw the appellant, and was twenty-four feet north of her. The proof indicates that after applying his brakes the car skidded 58 to 60 feet before stopping 10 feet behind the van, after striking

it. Appellant contends that the trial court refused to permit the appellee Bridgewater to be examined as an adverse witness, with reference to whether or not the lights of the defendant, Musser's Potato Chips, Inc., truck failed to dim its lights, but the record discloses, however, that finally this testimony was admitted and the objections by appellee were overruled. The record shows that the highway is straight at this point, was dry, was up on a fill. It was open for three and one-half or four miles, south of the Town of West, and was open and straight at the place where the Negroes' car collided with appellant's car, and where appellee Bridgewater's car struck her.

The appellant vigorously denied several times that the truck of appellee, Musser's Potato Chips, Inc., ever dimmed its lights as it approached her from the south as appellee Matthews claimed. Appellant further stoutly maintained that she was standing on the west shoulder of the highway off of the pavement when she was struck by the appellee Bridgewater's car. This was denied by the appellee Bridgewater and by the appellee William Lewis Matthews. The injuries which the appellant sustained were substantial and permanent. Her medical and hospital bills amounted to $5,084.65. She was hospitalized in the Mississippi Baptist Hospital, Jackson, Mississippi, from the 4th day of July 1962 until the 6th day of August 1962, and in Montfort-Jones Memorial Hospital in Kosciusko, Mississippi, from August 6, 1962, until October 27, 1962. Mrs. Kettle, appellant, sustained a multiple fractured pelvis, a fractured knee, loss of the middle finger on her right hand which had to be amputated because it was hanging only by the skin. She received urinary-bladder injuries because she had to wear a catheter for a long period of time in the hospital. She had injuries to the transverse processes of her spine, and she further developed heart trouble while she was confined in the hospital. Dr. William C.

Warner, an orthopedic surgeon in Jackson, Mississippi, testified in her behalf that her permanent injuries were to the extent of at least twenty-five percent to her whole body, and an additional fifteen percent permanent disability to her right hand. Dr. Jackson of Kosciusko testified that she had a permanent disability to her body as a whole between twenty-five and fifty percent.

Default judgment was taken against the defendant Lenora Davis in the sum of $40,000, and the jury rendered a verdict for the appellees', Musser's Potato Chips, Inc., William Lewis Matthews and Ben Phillips Bridgewater. The attorney for Ben Phillips Bridgewater at the beginning of the trial of the case had offered $5,000 in full and complete settlement on account of all injuries sustained by the appellant because of any negligence on the part of the appellee Ben Phillips Bridgewater which was refused by the appellant.

From the verdict and judgment in favor of the appellees Musser's Potato Chips, Inc. and William Lewis Matthews, appellant urges that the jury verdict is contrary to the overwhelming weight of the evidence, and that the lower court should have granted a motion for a new trial for the same reason, and that the jury's verdict was influenced by passion and prejudice. Objections were made also to certain instructions which were given, and to the fact that the appellant was not allowed to cross-examine the aforesaid, the appellee's adverse witnesses.

It is unnecessary to consider all of the errors assigned by the appellant since two errors assigned are sufficient to merit the final disposition of this appeal.

Addressing ourselves to the first error assigned by appellant, which is that the court erred in overruling appellant's motion for a new trial and in refusing to grant a new trial on the ground that the verdicts of the jury finding for the defendants, Musser's Potato Chips, Inc., William Lewis Matthews and Ben Phillips Bridge-

water, were contrary to the overwhelming weight of the evidence, and so unreasonable as to evince bias, prejudice and corruption on the part of the jury, and did not respond to reason.

We do not believe, as will be shown, that it is necessary to consider this assignment of error insofar as the acts of the defendants Musser's Potato Chips, Inc., and William Lewis Matthews, its servant, are concerned. We will therefore only consider this assignment of error as it applies to the defendant, Ben Phillips Bridgewater, who was found to be free of any contributory negligence by the jury, and in whose behalf a verdict was rendered.

In determining whether or not the lower court erred in refusing to grant appellant a new trial on the aforesaid grounds, we must, of course, review the testimony of all witnesses which relates to the acts of the defendant Ben Phillips Bridgewater after he saw the truck of Musser's Potato Chips, Inc. parked in the right lane of Highway 51, with its lights burning, facing in a northerly direction, and when he was blinded by said lights. The record restricts us to the testimony of the defendants, Ben Phillips Bridgewater, William Lewis Matthews, the driver of Musser's Potato Chips, Inc. truck, and the testimony of the patrolman, Mr. Howell. As a matter of fact, we need not go beyond the testimony of the defendant Ben Phillips Bridgewater himself to find ample and valid reasons why a new trial should have been granted by the trial court insofar as the damages caused by the negligence of this appellee are concerned. To the sworn testimony of defendant Bridgewater we now address ourselves. He testified that he was driving approximately fifty to fifty-five miles per hour, and the record discloses that this was about 1 or 1:10 A. M. of the morning of July 4th. He testified that he saw the lights of the truck, and he first thought the truck was moving. Subsequently, when he realized the truck was stationary, he took his foot

off of the accelerator, thereby slowing down the forward motion of his car. He testified that the lights of the truck blinded him, and that he dimmed his lights, asking for a dimming of the truck lights and that they were not dimmed. He did not apply the brakes. He testified unequivocally that the truck lights blinded him, but later he rephrased this statement with reference to being blinded by saying that he was not completely blinded, but that his vision was obscured and that *he could not see beyond, i. e., behind the lights of the truck.* This defendant further testified he knew that it was his duty to keep a proper lookout for objects ahead and other vehicles and persons in his lane of travel. He testified further that, although he could not see beyond the lights of the truck, he was still traveling at a rate of thirty-five to forty miles per hour when he struck the appellant. The only explanation he could give for striking the appellant, other than his speed at the time, was that he could not see beyond the headlights of the truck, and therefore he could not detect her until after having passed the lights of the truck, and that she was then only twenty-four feet ahead of him and was standing in the right or southbound lane of the highway, approximately three or four feet "from the right shoulder", which he corrected by saying "into the highway." He testified further that Mrs. Kettle was struck just to the left of the extreme righthand of his car, and she went over his right headlight or fender, he did not apply his brakes until he actually saw Mrs. Kettle and then he pulled into the side of the truck in an attempt to avoid striking her. That portion of appellee Bridgewater's testimony which relates to the whereabouts of the appellant is in dispute since the appellant testified that she was standing on the shoulder of the road, and this defendant swerved over and struck her while she was so standing. In determining the question of negligence on the part of the appellee Bridgewater,

we can concede that appellant was guilty of contributory negligence of a flagrant and gross nature. We can assume that she was still standing in the southbound lane of the highway even after the defendant William Lewis Matthews had called three or four times telling her and the Negroes to get out of the highway, that a car was approaching. She was obviously distressed over her car being wrecked by the drunken Negroes and did not pay attention to the warnings until it was too late. The contributory negligence of the appellant, however great, would not exonerate or excuse any negligence of the appellee Bridgewater, which was a proximate cause of her injuries. He can and should be held responsible under the well-established rules as announced by this Court for that degree of contributory negligence of which he is guilty. This defendant, furthermore, admitted that he sensed danger, and still he did not reduce the speed of his car below thirty-five or forty miles an hour in spite of the fact he could not see beyond the lights and sensed said danger.

The rules of law which have application here are well-known and numerous. In 22 A. L. R. 2d, § 3, p. 300, we find the general rule discussed with reference to a motorist stopping his car, or having it under such control as is necessary, when his vision was interfered with by glaring and dazzling lights. The general rule paraphrased is simply that when a motorist is blinded by lights, he must either stop if his vision is cut off completely, or, if not cut off completely, then he must proceed at such a rate of speed, and with such control of his vehicle, as to be able to stop in time to avoid any discernable object in the road ahead. B. Kullman & Company v. Samuels, 148 Miss. 871, 114 So. 807 (1927); Terry v. Smylie, 161 Miss. 31, 133 So. 662 (1931); Miss. Power & Light Company v. Lembo, 202 Miss. 532, 32 So. 2d 573 (1947).

In the case of Pullin v. Nabors, 240 Miss. 864, 128 So. 2d 117 (1961), this Court reversed a judgment for the defendant, which was entered in the Circuit Court of Choctaw County, Mississippi, in and under facts which are comparable to the facts in the case at bar. We pointed out that "* * * under present day traffic conditions any driver of an automobile must be prepared for the sudden appearance of obstructions in the street or highway, or of other vehicles at intersections, and his failure to act properly when they appear may be found to amount to negligence. * * * He (appellee) testified that he saw the red lights about a quarter of a mile away and that he knew that red lights indicated danger. Thus he sensed, or should have, that there was something on the highway that had a right to be there."

■■ ■ Furthermore in Graves v. Johnson, 179 Miss. 465, 176 So. 256 (1937), we held that a driver would be presumed to have seen what he should have seen in the performance of the obligations required of him in a situation as it occurs. There was testimony in the Pullin case that the red lights flashing could be seen a mile west of the location of the collision. The appellee himself testified that he saw the red lights of the patrolman's car and he knew that there was danger ahead. We held that he is presumed to have seen the dangerous situation in the highway, and his failure to stop his automobile prior to colliding with the appellant was negligence. It appears that the overwhelming weight of the evidence shows that the appellee was grossly negligent and such negligence was the proximate cause of the collision and the resulting injuries to the appellant.

The same rule of law is reaffirmed in Lee v. Reynolds, 190 Miss. 692, 1 So. 2d 487 (1941); and Miss. Power & Light Company v. Lembo, 202 Miss. 532, 32 So. 2d 573 (1947). In Lee v. Reynolds, supra, this Court held that a peremptory instruction should have

been given in favor of the plaintiff because of the defendant's liability. In that case the sole question raised on appeal was that the amount of damages awarded by the jury was inadequate. This Court held that the verdict was so grossly inadequate as to evince prejudice, and if not the result of prejudice, it was due to an inadequate estimate of the total injuries suffered, or to an unjust appraisal of the degree to which plaintiff's negligence, if any, contributed to such injuries.

Again in B. Kullman & Company v. Samuels, supra, we repeated the refrain, which is simply that as long as the driver of the car realized that he could not see ahead on account of being blinded by lights, he should have taken steps at once to stop his car as soon as he reasonably could, considering the surrounding conditions, including other traffic. The fact that the defendant Ben Phillips Bridgewater was not actually exceeding the speed limit at the time he struck appellant can be of little comfort to him, for the reason that, even though the law permits a motorist to operate his automobile in a certain area at a maximum speed, that principle presupposes compliance with the other known rules of safety, namely, that the operator of the car will keep his under control and be on the alert for pedestrians and others using the highway. This the defendant Ben Phillips Bridgewater candidly admitted that he did not do and therefore the rule laid down in Robertson v. Welch, 242 Miss. 110, 134 So. 2d 491, applies insofar as the negligence of this appellee Ben Phillips Bridgewater is concerned.

In Robertson v. Welch, 242 Miss. 111, 134 So. 2d 491, this Court held that Welch was under the further legal obligation at the time and under the conditions to drive his automobile at such speed as to avoid injury to persons coming within the range of his lights. Citing Frazier v. Hull, 157 Miss. 303, 127 So. 775; Rhodes v. Fullilove, 161 Miss. 41, 134 So. 841; Jackson City

Lines v. Harkins, 204 Miss. 707, 38 So. 2d 102; Shofner v. Illinois Central R. Company, 188 F. Supp. 422. Paraphrasing the testimony: Appellee Welch was driving his automobile down a national highway, in a closely built-up area, at a late hour, on a misty, rainy night. He was traveling at a speed of thirty-five miles per hour when he was unable to see anything, even to four adult persons who had already walked almost entirely across the road in front of him in full view, if he were looking. In other words, the deceased was hit by the right fender or the right light of his car, after she had almost cleared the path of the approaching vehicle. Since he had lights on his car, it is incredible that he did not see these people, if he were in fact looking. In a belated effort to extenuate his conduct, he finally surmized that the deceased must have stumbled in front of him. This was not a statement by him of a positive and definite fact, but only of conjecture. (Buntyn v. Robinson, 233 Miss. 360, 102 So. 2d 126.) It was pure conjecture because he had repeatedly vowed and declared that he did not even see Mrs. Raines before he hit her, and if he did not see her before he hit her, obviously he was not able to testify that she had stumbled under his car. In the case at bar, insofar as anything behind the lights of the truck is concerned, Bridgewater might as well have been physically blind in the operation of his car because, he testified, he could not see anything beyond (or behind) the lights of the truck, and yet he continued to operate his car at thirty-five to forty miles per hour. We have repeatedly held this to be the rule in Ulmer v. Pistole, 115 Miss. 485, 76 So. 522; Snyder v. Campbell, 145 Miss. 287, 110 So. 678; Murphy v. Latham, 210 Miss. 434, 49 So. 2d 807, 49 A. L. R. 1402.

██ ██ The situation which faced the defendant, Ben Phillips Bridgewater, is not unlike the situations which motorists face when, because of heavy rain, fog, snow or ice, they cannot see what is ahead of them, and there-

fore they cannot safely operate their automobiles under such conditions. Irrespective of speed limits, the motorist must operate his automobile prudently under all of the existing conditions at the particular time. Keith v. Yazoo & M. V. R. Company, 168 Miss. 519, 151 So. 916; Evans Motor Freight Lines v. Fleming, 184 Miss. 808, 185 So. 821; Miss. Power & Light Company v. Lembo, supra.

In passing, we feel it is not amiss to briefly comment on the veracity of appellee Bridgewater. Too unfrequently do we witness truth so completely exhibited. His forthright testimony remains a monument to his integrity, and a fitting commendation to his attorneys. This defendant "sweareth to his own hurt, and changeth not", even though his testimony placed him beyond the protection of immunity for the regrettable accident.

In the recent case of Kenneth C. Layton, et al. v. Shirley Edward Cook, d.b.a. Cook's Pharmacy, No. 42,-890, rendered February 17, 1964, not yet reported, an exceptionally lucid and thorough analysis of the pertinent question of negligence, which are also involved in the case at bar, may be found in the opinion thereof.

██ ██ The facts in the Layton v. Cook case are strikingly similar. There, the accident also occurred at night, the appellee likewise was blinded by lights of an approaching car, the deceased and his young friend were walking on the shoulder of the road. The appellee never saw the fourteen-year old boy, he merely felt a thud when his car struck him. Appellee also dimmed his lights, as in the case at bar, but the oncoming car failed to do so, thus blinding the appellee who was driving in this blinded condition at a speed of forty miles per hour in a thirty-mile speed zone. Appellee there, as in the case at bar, did not use his brakes when blinded, but only took his foot off of the accelerator. He did not see the two boys walking along the shoulder although they were in front of him. As in the case

at bar, he did not sound his horn. We held that the testimony of Ross, the driver of the Cook truck, established without dispute that he was negligent, and we likewise hold here that the testimony of appellee Bridgewater conclusively establishes negligence in his operation of his car in the following particulars: Failure to slow down sufficiently and get his car under control, and stop if necessary when he saw the parked truck in the east lane with extremely bright lights and when he was blinded by them; failure to see the appellant in the road, or on the shoulder thereof; and since he is presumed to see what he should have seen, the failure to blow his horn or give any other signal; the failure to operate his car under said conditions in such a manner and at such a speed as would enable him to stop or avoid hitting the appellant.

Section 8202 (d), Miss. Code 1942, Rec. requires that "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian * * * and shall give warning by sounding the horn when necessary * * *". One long blast from Bridgewater's horn might have caused the appellant to promptly go to a place of safety.

Section 8176, Miss. Code 1942, Rec. states that the operator of a motor vehicle must decrease speed "when special hazard exists with respect to pedestrians or other traffic, or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person * * *".

Realizing that the citing of additional authority would be redundance, nevertheless the salutary rule hereinabove announced has been affirmed repeatedly and can be found also in Evans Motor Freight Lines v. Fleming, supra; Matthews v. Thompson, 231 Miss. 258, 95 So. 2d 438; and Williams v. Moses, d.b.a. Natchez Used Tank Company, 234 Miss. 453, 106 So. 2d 45.

It is unnecessary to consider the first assignment of error as it relates to the appellees Musser's Potato Chips, Inc. and William Lewis Matthews. A new trial will have to be granted the appellant as to the negligence of these two appellees because of the fourth error assigned by the appellant which was the granting of Instruction No. 10 to the two appellees.

We have deliberately refrained from considering any testimony relating to these two appellees or their alleged negligence except as it was absolutely necessary in determining the negligence of appellee Bridgewater, for the reason that the case must be retried as to the alleged negligence of these two appellees.

Instruction No. 10 is as follows: "The Court instructs the jury for the defendants, William Louis Matthews, and Musser's Potato Chips, Inc., that a person who is confronted with a sudden emergency, not of his own creation, is not held to the same high degree of care as otherwise would be the case, and that the true test of what would or would not be negligence in such an emergency is what a reasonable and prudent man would have done under the particular circumstances."

The confounding misfortune, common in the practice of law, and to which all attorneys, even seasoned veterans, sooner or later are heirs, is that in the fierce heat of a trial they will rely upon their memory of what the law is, rather than verify it. This occupational nemesis has occurred here because Instruction No. 10 was misleading and is erroneous.

An objective review of all of the evidence reflected in the record justifies the assertion that appellees, Musser's Potato Chips, Inc. and Matthews, were not entitled to a sudden emergency instruction. Since this instruction seems to be somewhat confusing generally, we will therefore briefly consider some of the cases in which the sudden emergency instruction played

a predominant part, and whether Instruction No. 10 embodied those fundamental requirements which we have repeatedly held are essential. We find that while we did not criticize the form of the instruction in Rushing v. Edwards, 244 Miss. 677, 145 So. 2d 695, decided October 22, 1962, we did criticize the giving of it under the particular facts in that case.

In Hill v. Pruitt, 99 So. 2d 601 (Miss. 1958), and in Delta Chevrolet Company v. Waid, 211 Miss. 256, 51 So. 2d 443 (1951), the form of the instruction was upheld, and without an opinion in Natchez Coca-Cola Bottling Company v. Watson, 160 Miss. 173, 133 So. 677; and in Pullin v. Nabors, supra, we considered the phrase ''sudden emergency not of his own making'', and we held that the instruction was improperly given therein because if there was an emergency, it was of their own making. 240 Miss. at p. 874, 128 So. at p. 121. In Rushing v. Edwards, supra, where some of the above authorities may be found, we pointed out that the phrase ''not of his own making'', which was urged as error, is not as precise as ''proximately caused by the fault of the driver'', but that its use there could not have misled the jury. Moreover, the plaintiff received three instructions which correctly and adequately submitted the issue of the emergency being proximately caused by the fault of the driver, and amply set forth the additional definitions and limitations upon the doctrine, and when all the instructions were read together the jury was amply advised of the sudden emergency defense.

Finally, in Gulf, Mobile & Ohio R. Company v. Withers, 247 Miss. 123, 154 So. 2d 157, we expressly spelled out the exact, essential ingredients which are necessary in order that a sudden emergency instruction can be properly drawn and given. In the Withers case, the instruction given is far more complete than Instruction No. 10 in the case at bar. In the Withers case, the

instruction is as follows: "The Court instructs the jury for the Plaintiff that if you believe from a preponderance of the evidence that the Plaintiff was suddenly confronted with a sudden emergency not of his own making and was by reason thereof placed in a position of peril to himself without sufficient time in which to determine with certainty the best thing to do, he is not held to the same accuracy of judgment as is required of him under ordinary circumstances and in this instance if you believe from the preponderance of the evidence that the Plaintiff was immediately prior to the collision confronted with a sudden emergency which he did not create and was by reason thereof placed in a position of peril to himself, then in weighing the evidence and determining whether or not Plaintiff was guilty of negligence at the time of the collision you may take into consideration all the facts and circumstances as shown by a preponderance of the evidence and the situation with which the Plaintiff was confronted."

We held in the Withers case that the giving of the foregoing instruction was reversible error. We now reiterate the basic elements which we pointed out in the Withers case must be present in any instruction dealing with the "sudden emergency doctrine" in an accident.

In the Withers case, the instruction was held to be reversible error for the following reasons: (1) It did not define "sudden emergency", (2) and it did not state that, after the sudden emergency arose, the plaintiff exercised such care as a reasonably prudent and capable driver would use under the circumstances. In Moore v. Taggert, 233 Miss. 389, 102 So. 2d 333, almost identical language was condemned and held to be reversible error. In Crump v. Brown, 246 Miss. 631, 151 So. 2d 822 (1963), substantially the same instruction with the same defects we held to be reversible error,

and in this case it was further held that the giving of the general instructions on negligence did not cure the defect in the sudden emergency instruction. See also Jones v. Dixie Greyhound Lines, 211 Miss. 34, 50 So. 2d 902.

 Therefore, insofar as the appellees Musser's Potato Chips, Inc. and William Lewis Matthews are concerned, this cause is reversed and remanded for the reason that the sudden emergency Instruction No. 10 granted to said appellees misled the jury in that it did not incorporate within it these three essential elements: (1) They "must have used reasonable care before the emergency arose, and it was not one of their own creation, or making; (2) define and describe briefly the sudden emergency, stating the facts which the jury might decide warranted a finding of sudden emergency; and (3) after the sudden emergency arose they must exercise such care as a reasonably prudent and careful person (careful driver) would use under the unusual circumstances." G. M. & O. R. Company v. Withers, supra.

 Under our comparative negligence statute, the jury can reduce the amount of damages in proportion to appellant's negligence, if any, and award damages in proportion to the negligence of appellee Bridgewater. Vaughan v. Bollis, 221 Miss. 589, 597, 73 So. 2d 160. The judgment of the circuit court is therefore reversed and judgment is rendered here in favor of the appellant against the appellee Bridgewater on the issue of liability, and the cause is remanded as to him for trial on the issue of damages only. As to appellees Musser's Potato Chips, Inc. and William Lewis Matthews, the judgment of the circuit court is reversed and the cause remanded for a new trial.

Judgment reversed for damages only as to Bridgewater; judgments reversed and remanded as to Musser's Potato Chips, Inc. and William Lewis Matthews.

*Kyle, P. J., and Gillespie, McElroy and Patterson, JJ.,* concur.